CATHERINE D. PAGE, ADMINISTRATRIX C.T.A. OF THE ESTATE OF
CHANNING NELSON PAGE, DECEASED v. GEORGE SLOAN AND
HIS WIFE, REA SLOAN, CO-PARTNERS, TRADING AND DOING BUSINESS
AS OCEAN ISLE MOTEL

No. 10

(Filed 31 July 1972)

1. Negligence § 53; Innkeepers § 5— motel owner — liability to guests —
negligence of independent contractor

An innkeeper's duties to exercise due care to keep his premises
in a reasonably safe condition and to warn guests of any hidden
peril are nondelegable, and liability cannot be avoided on the ground
that their performance was entrusted to an independent contractor.

2. Negligence § 53; Innkeepers § 5— motel owner — liability to guests —
nondelegability of duty to use due care

The rule of nondelegability is grounded on the premise that an
innkeeper's duty to use due care for the safety of his guests is a
responsibility so important to the public that he should not be per-
mitted to transfer it to another.

3. Master and Servant § 21; Innkeepers § 5— torts of independent con-
tractor — liability of employer of the contractor — negligence of motel
owner — application of res ipsa loquitur to explosion of water heater

Where plaintiff's testator was killed while a paying guest in
defendants' motel as a result of the explosion of a water heater in-
stalled on the premises by an independent contractor, defendants
could be liable on one of three bases: (1) failure to use due care for
safety of their guests by employing a plumber instead of an electrician
to repair the electrical heating element on the water heater; (2)
since innkeepers' duties are nondelegable, liability for an injury or
death caused by the plumber's negligent failure properly to repair
the water heater as if they had made the repairs themselves; (3)
application of res ipsa loquitur.

4. Rules of Civil Procedure § 56— summary judgment — requisites

On motion for summary judgment, the moving party has the
burden of showing that there is no genuine issue as to any material
fact and that he is entitled to a judgment as a matter of law.

5. Rules of Civil Procedure § 56— summary judgment — necessity of
counter-affidavits — verified complaint as affidavit

Upon plaintiff's failure to file counter-affidavits to defendants'
motion for summary judgment, plaintiff could not have her verified
complaint treated as an affidavit to defeat defendants' motion unless
the complaint was made on personal knowledge, set forth facts as
would be admissible in evidence and showed affirmatively that the
affiant was competent to testify as to the matters stated therein;
however, failure of plaintiff to file affidavits and failure of her

complaint to meet these requirements did not shift from defendants
the burden of proving themselves entitled to summary judgment.

**6. Rules of Civil Procedure § 56— summary judgment — negligence case**

It is only in exceptional negligence cases that summary judgment
is appropriate because the rule of the prudent man (or other applica-
ble standard of care) must be applied, and ordinarily the jury should
apply it under appropriate instructions from the court.

**7. Rules of Civil Procedure § 56— summary judgment — material issue of
fact**

Where evidentiary material offered by defendants to support
their motion for summary judgment presented material issues of
fact on which reasonable men could reach different conclusions, sum-
mary judgment was not properly entered.

**8. Rules of Civil Procedure § 56; Negligence §§ 6, 31— summary judg-
ment — judgment as a matter of law — applicability of res ipsa loqui-
tur**

On motion for summary judgment, defendants failed to show
that they were entitled to judgment as a matter of law in that they
did not clearly establish the inapplicability of the doctrine of *res
ipsa loquitur* to the death of plaintiff's testator as the result of an
explosion of defendant innkeepers' water heater.

ON *certiorari* to the Court of Appeals to review its decision
reversing judgment of *Long, J.,* 18 January 1971 Session,
MOORE Superior Court.

Plaintiff brought this action to recover for the wrongful
death of Channing Nelson Page. She alleged in her complaint
that defendants owned and operated the Ocean Isle Motel in
Brunswick County, North Carolina. On and prior to 29 August
1964 Channing Nelson Page was a paying guest in said motel,
assigned to a room adjoining the utility room which contained
the motel's 82-gallon electric water heater. The heater exploded
about 6:30 a.m. on 29 August 1964 resulting directly and proxi-
mately in the death of plaintiff's testator. She further alleged
that said electric water heater was in the exclusive possession
and control of the defendants and its explosion was caused by,
or due to, the actionable negligence of the defendants in that:
(1) they failed to equip the heater with proper and adequate
safety valves, electrical controls and thermostat devices which
would have prevented the accumulation of steam pressure in
the heater; (2) they failed to keep the heater in a proper state
of repair; (3) they failed to have the heater inspected as re-
quired by the North Carolina Boiler Law, Rules and Regula-

tions; (4) they used a plastic dip tube in the water heater when they knew, or should have known, that if the water in the heater became too hot it would cause the plastic dip tube to melt and flow into the outlet pipes completely plugging them, thereby permitting extremely high pressure to develop; (5) they failed to maintain a proper adapter and used a non-approved type relief valve; and (6) they failed to keep the relief valve in a proper state of repair so as to avoid the accumulation of extremely high pressure in the water heater. Plaintiff says that by reason of the death of her testate, proximately caused by the joint and concurrent negligence of the defendants as alleged, she is entitled to recover $75,000.00. She prays judgment in that amount.

In their answer, defendants admit (1) the death of Channing Nelson Page at the time and place mentioned in the complaint; (2) their ownership and operation of Ocean Isle Motel; (3) that Page was a paying guest and occupied a room adjoining the utility room; and (4) that the electric water heater exploded at the time and place alleged in the complaint. Defendants specifically deny each and every allegation of negligence on their part and aver that the explosion of the water heater was due to causes beyond their control and amounted to an unavoidable accident; that any defects that might have existed in the water heater resulted from the negligence of others, which was the proximate cause of the explosion, and not from any negligence on the part of the defendants. Defendants further assert in their answer that if the electric water heater had any defects in its manufacture, installation, or servicing, such defects were not known to defendants and could not have been known to them prior to the explosion by reason of the fact that the electric water heater was in a sealed container with no external controls. Defendants aver that they acted at all times as reasonable and prudent persons similarly situated would have acted. Defendants pray that the action be dismissed.

The pretrial stipulations of the parties tend to show the facts set out in the numbered paragraphs which follow:

1. Plaintiff is the duly appointed, qualified and acting administratrix C.T.A. of the Estate of Channing Nelson Page who died testate on 29 August 1964.

2. The defendants George Sloan and Rea Sloan are the owners and operators of the Ocean Isle Motel at Ocean Isle,

Brunswick County, North Carolina, and were the owners and operators of said motel at all times pertinent to this case.

3. On 27 August 1964 plaintiff's testator, Channing Nelson Page, was accepted as a paying guest at the Ocean Isle Motel and assigned a corner room which adjoined the utility room in which an electric water heater was located. At about 6:30 a.m. on 29 August 1964 said water heater exploded with tremendous force and violence and the explosion resulted in the death of Channing Nelson Page.

4. The original units of Ocean Isle Motel were constructed by George Sloan and Rea Sloan in 1957, and the water heater for these original units was installed by a plumber named Olaf Thorsen.

5. Five additional units were constructed as a separate building at Ocean Isle Motel in 1962, and the plumbing work was done by Shallotte Hardware Company, including the furnishing and installation of the electric water heater in question. The explosion involved in this case occurred in one of these additional rooms, used as a utility room, where Shallotte Hardware Company had installed the water heater in April 1962. It was an eighty-two gallon electric water heater manufactured by State Stove and Manufacturing Company. As thus installed it remained in operation and use in the five additional units from about April 1962 until the explosion on 29 August 1964. George Sloan and Rea Sloan added four more rooms in April 1964 with hot water to be furnished to these four additional units by this same eighty-two gallon electric water heater. Olaf Thorsen performed the plumbing work in April 1964 with respect to these four additional units.

6. In June or July 1964, due to a complaint of insufficient hot water by motel guests, George Sloan and Rea Sloan called plumber Olaf Thorsen to check the water heater. This water heater was rated by an inscription on a plate attached thereto at 3000 watts for the upper heating element, 2500 watts for the lower heating element, and at 3000 watts maximum. When manufactured and assembled at State Stove and Manufacturing Company it was equipped with two thermostats and wiring between the two thermostats and the two heating elements, but was not equipped with any additional electrical wiring, any plumbing fixtures, or any relief valve of any type. It had holes for two

pipes at the top of the tank, one for a hot water pipe and the other for a cold water pipe, with the pipes to be furnished by the installer. The hot water unit was a sealed container with no external controls. The thermostats were covered by a shield which was screwed onto the sealed container. Shallotte Hardware Company had furnished and installed a one-half inch pressure relief valve set to work at 125 p.s.i. by its manufacturer; and Alton Millikan, a partner of Shallotte Hardware Company, was in charge of the installation work and supplied the electrical and plumbing connections.

7. Olaf Thorsen was a licensed plumber, and Alton Millikan was a licensed electric and plumbing contractor. When the eighty-two gallon electric water heater in question was installed at the Ocean Isle Motel in April 1962 by Shallotte Hardware Company, it was not inspected by the Boiler Inspection Division of the North Carolina Department of Labor as required by G.S. 95-54 et seq; but the installation was inspected by the Brunswick County Inspector.

8. When Olaf Thorsen checked the water heater in question in June or July 1964 at the request of George Sloan and Rea Sloan, due to complaints by motel guests of insufficient hot water as set out in paragraph No. 6 above, he removed the lower heating element of the water heater (2500-watt size), obtained a replacement from Shallotte Hardware Company (4500-watt size), and installed same. After the explosion on 29 August 1964, it was determined that the lower heating element in the water heater at the time of the explosion was an element of 4500-watt size.

Defendants moved for summary judgment under Rule 56 of the Rules of Civil Procedure, with supporting affidavit and depositions, contending there was no genuine issue of fact for trial. Plaintiff filed no opposing affidavits. Upon consideration of the pleadings, affidavit, depositions and stipulations, the trial judge, being of the opinion that there was no genuine issue of any material fact, allowed the motion and entered summary judgment for the defendants. Plaintiff appealed, and the Court of Appeals reversed for reasons stated in its decision, 12 N.C. App. 433. We allowed certiorari.

*Anderson, Nimocks & Broadfoot by Henry L. Anderson, Attorneys for defendant appellants.*

*W. D. Sabiston, Jr., and Tharrington & Smith, Attorneys for plaintiff appellee.*

HUSKINS, Justice.

Did the Court of Appeals err in reversing summary judgment entered by the trial court in favor of defendants? Answer depends upon whether defendants, in light of an innkeeper's duty to a guest, have borne the burden which the law places upon a movant for summary judgment.

What standard of care is required of innkeepers with respect to their guests?

[1] An innkeeper is not an insurer of the personal safety of his guests. He is required to exercise due care to keep his premises in a reasonably safe condition and to warn his guests of any hidden peril. *Barnes v. Hotel Corp.*, 229 N.C. 730, 51 S.E. 2d 180 (1949). The duties thus imposed upon an innkeeper for the protection of his guests "are nondelegable, and liability cannot be avoided on the ground that their performance was entrusted to an independent contractor." 40 Am. Jur. 2d, Hotels, Motels and Restaurants § 81. *Compare* the English rule, Chapman, Liability for the Negligence of Independent Contractors, 50 L.Q. Rev. 71 (1934). *See* Prosser on Torts (4th ed. 1971), § 71 at p. 470.

[2] The rule of nondelegability is grounded on the premise that an innkeeper's duty to use due care for the safety of his guests is a responsibility so important to the public that he should not be permitted to transfer it to another. The Restatement of the Law of Torts expresses and illustrates the rule as follows: "One who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business, or a chattel which he supplies for others to use for his business purposes or which he leases for immediate use, is subject to the same liability for physical harm caused by the contractor's negligent failure to maintain the land or chattel in reasonably safe condition, as though he had retained its maintenance in his own hands." Restatement of Torts 2d, § 425. The second illustration following this section is especially pertinent: "2. A operates a hotel. He employs B as a

Page v. Sloan

plumber to install a shower bath. B negligently transposes the handles so that the hot water pipe is labeled cold. C, a guest, deceived by the label, turns on the hot water and is scalded. A is subject to liability to C."

The rule of nondelegability has been applied where plaintiff was injured by the negligent operation or maintenance of an elevator located in defendant's premises. *Stott v. Churchill*, 36 N.Y.S. 476 (1895), aff'd 157 N.Y. 692, 51 N.E. 1094; *Brown v. George Pepperdine Foundation*, 23 Cal. 2d 256, 143 P. 2d 929 (1943). Even where the company which manufactured and installed the elevator had by contract assumed responsibility for the inspection, repair and maintenance of the elevator, the rule was applied and defendant owner of the premises was held liable. *Otis Elevator Co. v. Bond*, 373 S.W. 2d 518 (Tex. Civ. App. 1963). A like result is reached in *Blackhawk Hotels Co. v. Bonfoey*, 227 F. 2d 232 (C.A. 8th 1955). *Accord, Friedman v. Schindler's Prairie House*, 230 N.Y.S. 44, aff'd, 250 N.Y. 574, 166 N.E. 329 (1929).

[3] Thus, depending on the evidence offered at the trial, defendants in this case could be liable on any of the following bases:

> (1) Failure to use due care for the safety of their guests by employing a plumber instead of an electrician to repair the electrical heating element on the water heater, thereby failing "to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." Restatement of Torts 2d, § 411. While making repairs to the heating element of an electric water heater is not "inherently" or "intrinsically" dangerous work, it involves work which will likely cause injury if proper safety precautions are not observed. *Compare Evans v. Rockingham Homes, Inc.*, 220 N.C. 253, 17 S.E. 2d 125 (1941). If defendants knew, or in the exercise of due care should have known, that a plumber was not competent to do such work and if the plumber's negligence was a proximate cause of the explosion and ensuing death of plaintiff's testate, defendants would be liable.

(2) Since the duties imposed upon an innkeeper for the protection of his guests are nondelegable and liability cannot be avoided on the ground that their performance was entrusted to an independent contractor, defendants would be subject to the same liability for an injury or death caused by the plumber's negligent failure properly to repair the electrical heating element on the water heater as if they had made the repairs themselves.

(3) Application of the doctrine of *res ipsa loquitur*.

We now turn to the propriety of summary judgment for the defendants.

Guiding principles applicable to summary judgment under Rule 56 are detailed in *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971), and have since been applied in various cases by this Court, including *Harrison Associates v. State Ports Authority*, 280 N.C. 251, 185 S.E. 2d 793 (1972); *Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972); *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897 (1972); *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E. 2d 35 (1972); *Schoolfield v. Collins*, 281 N.C. 604, 189 S.E. 2d 208 (1972).

[4] Our Rule 56 and its federal counterpart are practically the same. Authoritative decisions both state and federal, interpreting and applying Rule 56, hold that the party moving for summary judgment has the burden of "clearly establishing the lack of any triable issue of fact by the record properly before the court. His papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded." 6 Moore's Federal Practice (2d ed. 1971) § 56.15[8], at 2439; *Singleton v. Stewart, supra*. Rendition of summary judgment is, by the rule itself, conditioned upon a showing by the movant (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. G.S. 1A-1, Rule 56(b); *Kessing v. Mortgage Corp., supra*.

[5] Have defendants carried the burden of proof so as to entitle them to summary judgment? We first note that plaintiff filed no counter-affidavits. Rule 56(e) provides, *inter alia:* "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the

mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Thus plaintiff cannot rely on her verified complaint to defeat defendants' motion, accompanied, as it is, by competent affidavits and depositions.

A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein. Rule 56(e); *Williams v. Kolb,* 145 F. 2d 344 (D.C. App. 1944); *Fletcher v. Norfolk Newspapers, Inc.,* 239 F. 2d 169 (C.A. 4th 1956). Plaintiff's complaint here meets neither the first nor the third requirements of the rule for affidavits and therefore may not be considered.

Even so, defendants still have the burden of showing that there is no triable issue of fact and that they are entitled to judgment as a matter of law. Hence plaintiff may yet succeed in defending against the motion for summary judgment if the evidence produced by the movant and considered by the court is insufficient to satisfy the burden. *Walling v. Fairmont Creamery Co.,* 139 F. 2d 318 (C.C.A. 8th 1943); *Griffith v. William Penn Broadcasting Co.,* 4 F.R.D. 475 (E.D. Pa. 1945). "Where by the nature of things, the moving papers themselves demonstrate that there is inherent in the problem a factual controversy then, while it is certainly the part of prudence for the advocate to file one, a categorical counter-affidavit is not essential." *Inglett & Company v. Everglades Fertilizer Co.,* 255 F. 2d 342 (C.A. 5th 1958). To the same effect but stated somewhat differently: "Where the moving papers affirmatively disclose that the nature of the controversy presents good faith, actual, as distinguished from formal, dispute on one or more material issues, summary judgment cannot be used." *Murphy v. Light,* 257 F. 2d 323 (C.A. 5th 1958).

Thus we consider only the supporting documents presented by defendants together with the stipulations of the parties contained in the Order on Final Pre-trial Conference, filed 28 January 1971. The stipulations of fact contained therein will be considered as admissions. 6 Moore's Federal Practice (1971

Supp.) § 56.11[1.-5] at 100; *Stubblefield v. Johnson-Fagg, Inc.,* 379 F. 2d 270 (C.A. 10th 1967).

Due consideration of the supporting documents and materials presented by defendants leads us to the conclusion that the granting of summary judgment by the trial court was erroneous. We hold that defendants have failed to carry the movant's burden of proof.

[6] While our Rule 56, like its federal counterpart, is available in all types of litigation to both plaintiff and defendant, "we start with the general proposition that issues of negligence . . . are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner." 6 Moore's Federal Practice (2d ed. 1971) § 56.17[42] at 2583; 3 Barron and Holtzoff, Federal Practice and Procedure (Wright ed. 1958) § 1232.1, at 106. It is only in exceptional negligence cases that summary judgment is appropriate. *Rogers v. Peabody Coal Co.,* 342 F. 2d 749 (C.A. 6th 1965); *Stace v. Watson,* 316 F. 2d 715 (C.A. 5th 1963). This is so because the rule of the prudent man (or other applicable standard of care) must be applied, and ordinarily the jury should apply it under appropriate instructions from the court. Gordon, The New Summary Judgment Rule in North Carolina, 5 Wake Forest Intra. L. Rev. 87 (1969).

Moreover, the movant is held by most courts to a strict standard in all cases; and "all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion." 6 Moore's Federal Practice (2d ed. 1971) § 56.15[3], at 2337; *United States v. Diebold, Inc.,* 369 U.S. 654, 8 L.Ed. 2d 176, 82 S.Ct. 993 (1962).

Application of these rules to the evidentiary material demonstrates the impropriety of summary judgment in this case.

The material offered by defendants in support of their motion for summary judgment contains the following sworn statements by Olaf Thorsen, the plumber selected by defendants to repair the electric water heater:

"I don't know what the wattage was on the old element I removed or on the new element I purchased from Shallotte Hardware. . . . I did not know up to the time of the

explosion I had installed a 4500 watt element. . . . I have had some education and can read. . . . I didn't pay enough attention to this particular one to notice the wattage stamped on the side of it."

The material offered by defendants in support of their motion includes the deposition of Alton Millikan, a duly licensed plumber *and electrician*. The following sworn statements appear in his deposition:

"When your wattage goes up, your current goes up, and so does the arc that the thermostat draws. Each time it breaks it makes a bigger arc, and I never had any trouble with water heaters under 4500 watts. All the trouble we have encountered had 4500 watts on it. The function of a 4500 watt heating element would be to just heat the water quicker. The thermostat is rated 6,000 watts which should normally interrupt this current, but on all problems I ever encountered in heaters, it had 4500 watt. . . . If the thermostat is designed to and has operated with 3,000 watt element or 2500 watt element, and a 4500 watt element is thrown in and used, the thermostat could or might have trouble in cutting off that current because of it being additional wattage. . . . The current that gets to the element has to go through the thermostat, and by having increased the wattage, that is a larger arc of electricity. That extra arc could or might have damaged the points on the thermostat. It will tend to weld them quicker than a smaller load. When I say weld them, that means that the arc or current softens materials on the contact, and sticks together. That could or might cause the points to stick and hang. If that occurs the thermostat would freeze so that it would no longer control the temperature. . . . After an element is installed with increased wattage up to 4500 watts, it could or might operate for some period of time before it is damaged to the point of sticking. . . . That damage is simply the increased current damaging the metal points. . . . Any time you alter whatever was shipped with the unit, you should add additional safety devices. . . . Other factors that would cause the thermostat to become inoperative is lightning, but mostly lightning is pressure, and it tends to blow out rather than melt the thing together."

[7] In our opinion reasonable men could reach different conclusions on the evidentiary material offered by defendants to support their motion for summary judgment. Were defendants negligent in selecting a plumber instead of an electrician to repair an electrical element on the water heater? See Restatement of Torts 2d, § 425 at 412, Appendix, § 425 at 71; Prosser on Torts (4th ed. 1971), pp. 470 et seq. Was the plumber negligent in making the repairs? Was his negligence a proximate cause of the explosion and ensuing injury? The evidentiary material offered by defendants would permit a jury to answer all these questions in the affirmative as well as the negative. These are material issues of fact and demonstrate that the movants have failed to satisfy the burden of "clearly establishing the lack of any triable issue of fact by the record properly before the court."

[8] Moreover, defendants have not shown that they are entitled to a judgment as a matter of law. The evidentiary materials of record do not clearly establish the inapplicability of the doctrine of *res ipsa loquitur* because these materials tend to show that the water heater in question was under the exclusive control and management of the defendants; and explosion of a water heater is something which, in the ordinary course of events, does not happen if those who have the management of it use proper care. Under those circumstances the explosion itself would be some evidence of negligence on the part of those in control and would tend to establish a *prima facie* case requiring its submission to the jury. Evidence tending to explain the cause of the explosion merely accentuates the jury's role in this controversy and the unwisdom of summary judgment.

Whether *res ipsa loquitur* applies and whether this case should be submitted to the jury under that doctrine or under some other theory of law, or dismissed, are questions for determination by the trial judge at the close of the evidence. It would be inappropriate at this juncture, upon affidavits, to determine any of those matters. Our comments are intended merely to demonstrate defendants' failure to carry the burden of showing they are entitled to judgment as a matter of law.

"If there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial. And the problem of overcrowded calendars is not to be solved by summary disposition of issues of fact fairly presented in an

action." 6 Moore's Federal Practice (2d ed. 1971) § 56.15 [1.-12], at 2316.

For the reasons stated the decision of the Court of Appeals reversing the entry of summary judgment in favor of defendants is

Affirmed.