IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-718

Filed: 6 February 2018

Montgomery County, No. 15 CVS 477

BADIN SHORES RESORT OWNERS ASSOCIATION, INC., A/K/A BADIN SHORES
RESORT HOMEOWNERS ASSOCIATION, Plaintiff,

v.

HANDY SANITARY DISTRICT, Defendant.

Appeal by plaintiff from order entered 26 January 2017 by Judge Edwin G. Wilson, Jr. in Montgomery County Superior Court. Heard in the Court of Appeals 29 November 2017.

*Higgins Benjamin PLLC, by Gilbert J. Andia, Jr., for plaintiff-appellant.*

*Megerian & Wells, by Jonathan L. Megerian and Franklin E. Wells, Jr., for defendant-appellee.*

ZACHARY, Judge.

Plaintiff Badin Shores Resort Owners Association, Inc., also known as Badin Shores Resort Homeowners Association ("BSR"), is a nonprofit corporation representing the interests of homeowners in the planned unit development known as Badin Shores Resort. Defendant Handy Sanitary District ("Handy") is a sanitary district created pursuant to N.C. Gen. Stat. § 130A-47 (2016) that provides water and sewer utility services in various locations in North Carolina, including Montgomery County, where BSR is located. The present appeal arises from a dispute regarding

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

the terms of a contract executed by the parties in 2009. BSR appeals from the trial court's entry of summary judgment in favor of Handy and its dismissal of BSR's complaint against Handy. On appeal, BSR argues that Handy's summary judgment motion was not properly before the court, and that the trial court erred by granting summary judgment in favor of Handy. After careful review, we conclude that BSR is not entitled to relief and that the trial court's order should be affirmed.

Factual and Procedural Background

In 2009, BSR operated its own wastewater collection system, treatment plant, and associated spray field. On 12 March 2009, the parties signed a Wastewater Services Agreement (hereafter "the Contract") that provided for Handy to assume responsibility for BSR's wastewater services. Article II of the Contract stated that "Handy shall provide full wastewater service to BSR under this Agreement beginning no later [than] 90 days after the Badin Lake Area Sewer System [(hereafter "the BLSP")] is granted a full permit by DENR [(North Carolina Department of Environment and Natural Resources)] and is fully operational." Article V provided that BSR would be charged a fee of $30.00 per occupied lot. Article VI stated that Handy could adjust the rate charged to BSR "from time to time by action of the Handy Board of Directors, in the ordinary course of Handy's business" but that the base rate charged to BSR would not be increased "before the [BLSP] is online and operational."

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

On 22 July 2010, Handy filed suit against BSR, alleging "that [BSR] had refused [Handy's] multiple attempts to provide the contracted-for services and requested that the court issue an injunction ordering [BSR] to allow [Handy] to provide wastewater services under the contract." *Handy Sanitary Dist. v. Badin Shores Resort Owners Ass'n*, 225 N.C. App. 296, 297, 737 S.E.2d 795, 797-98 (2013). Handy also alleged that it was in the process of developing the BLSP, and that the agreed-upon charge of $30.00 per occupied lot was an important part of the consideration for Handy's agreement to the Contract. "[BSR] filed a motion to dismiss, answer, and counterclaim in response. [BSR] raised multiple affirmative defenses, including that Article II of the Agreement contained an unfulfilled condition precedent, namely that the North Carolina Department of Environment and Natural Resources ("DENR") had to issue a permit allowing operation of [BSR's] sewer system prior to operation of the system." *Id.* at 297, 737 S.E.2d at 798. "On 9 March 2011, the Superior Court entered a consent order requiring [BSR] to permit [Handy] to enter its land and connect [BSR's] properties to [Handy's] sewer system, [and to] maintain the current system[.] . . . The consent order 'resolve[d] all pending claims between the parties with prejudice.'" *Id.* at 298, 737 S.E.2d at 798.

On 20 January 2012, BSR filed a motion asking that the trial court order Handy to appear and show cause why it should not be held in contempt of court for its violation of the terms of the Contract incorporated into the consent order, as well

BADIN SHORES RESORT OWNERS ASS'N, INC. V. HANDY SANITARY DIST.

*Opinion of the Court*

as other terms of the consent order, entered on 9 March 2011. BSR alleged that, although Handy had assumed operation of BSR's wastewater system, it refused to provide maintenance services to components of the wastewater system. "The Superior Court, Montgomery County, entered an order to show cause on 23 January 2012, to which [Handy] responded with a counter motion to show cause, alleging in part that because DENR has not yet issued a permit, it was not required to provide services to [BSR]. . . . [B]y order entered 25 April 2012, [the trial court] made findings of fact, concluded that Article II of the Agreement concerning the DENR permit was not a condition precedent, and ordered [Handy] and [BSR] to perform all of their contractual duties." *Id.*

Handy appealed to this Court from that order, arguing that the trial court erred by ruling that Article II of the parties' contract was not a condition precedent. This Court noted that " '[w]here the plain language of a consent judgment is clear, the original intention of the parties is inferred from its words. The trial court's determination of original intent is a question of fact. On appeal, a trial court's findings of fact have the force of a jury verdict and are conclusive if supported by competent evidence.' " *Id.* at 299, 737 S.E.2d at 798 (quoting *Hemric v. Groce*, 169 N.C. App. 69, 75-76, 609 S.E.2d 276, 282 (2005)). The opinion in *Handy Sanitary* then set out the following unchallenged findings of fact from the trial court's order:

> 3. On or about March 9, 2011, the Parties entered into a Consent Order in which the contract executed the 12th day

- 4 -

BADIN SHORES RESORT OWNERS ASS'N, INC. V. HANDY SANITARY DIST.

*Opinion of the Court*

of March, 2009 (hereinafter "The Contract") by the Parties was incorporated into the Consent Order and all of the terms of the contract, were reaffirmed, except as expressly modified in the Consent Order.

4. The Contract entered into by the Parties states: . . .

B. Article II. <u>Connection/Activation Date</u>. Handy shall provide full wastewater service to [Badin Shores] under this Agreement beginning no later than 90 days after the Badin Lake Area Sewer System is granted a full permit by the North Carolina Department of Environment and Natural Resources (DENR) and is fully operational.

. . .

E. Article IX (B). Handy will operate the existing collection system and will maintain, make repairs, and install replacements to that system as from time to time may be necessary. . . .

(a) Handy will operate the [Badin Shores] Wastewater System until the connection is made to Handy's Wastewater Collection System. Handy will operate under the [Badin Shores] permit if permitted to do so by DENR.

. . .

9. The Contract when taken as a whole and in connection with the Consent Order entered to [sic] and executed by the parties and filed with the Court [on] March 9, 2011 is clear and unambiguous as it relates to the requirements of Handy to assume the obligation of operating, maintaining, repairing, and when and if necessary, replacing the existing [Wastewater] Collection System within [Badin Shores].

10. The Court after reviewing pages from the Fifth Edition of Black's Law Dictionary for the words assume, maintain,

BADIN SHORES RESORT OWNERS ASS'N, INC. V. HANDY SANITARY DIST.

*Opinion of the Court*

maintenance, obligate, obligation, operate, repair, and replace find[s] those words to be clear and unambiguous and that the Contract requires that Handy perform those services pursuant to the terms of the Contract and the Consent Order for the benefit of [Badin Shores] which services are to include all costs for electricity needed to operate, maintain, and or [sic] replace the [Badin Shores] collection system. . . .

*Id.* at 299-300, 737 S.E.2d at 799. On the basis of these and other findings, the court concluded in relevant part that:

3. The Wastewater] Services Agreement entered into between the Parties on or about March 12, 2009 and the Consent Order entered by the Court on or about March 9, 2011 are clear and unambiguous and Handy is required to perform it's [sic] obligations as set forth in the [Wastewater] Services Agreement and Consent Order without further delay. . . .

4. Paragraph II CONNECTION/ACTIVATION DATE of the Wastewater Services Agreement as set forth hereinabove is not a condition precedent and the Badin Lake Area Sewer System does not need to be fully operational and the Plaintiff does not need to be granted a full permit by the North Carolina Department of Environment and Natural Resources before the contractual right arises for [Handy] to provide full wastewater service to [BSR].

*Id.* at 300-01, 737 S.E.2d at 799-800.

In sum, following the parties' execution of the initial contract, legal proceedings were conducted in which (1) BSR argued unsuccessfully that it was not permitted or obligated to allow Handy to provide wastewater services until the BLSP was "fully operational" and had been granted "a full permit by DENR," and (2) Handy argued

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

unsuccessfully that, although it was providing wastewater services to BSR for a monthly fee of $30.00 per occupied lot, it was not obligated to provide maintenance services to BSR's wastewater system until the BLSP was "fully operational" and had been granted "a full permit by DENR." In both instances, the trial court ruled that the terms of the Contract did not establish as a condition precedent to the challenged obligation that Handy have received a final "full permit" by DENR. In *Handy Sanitary*, we observed that "[a]lthough [Handy's] position before the trial court in the contempt hearing and on appeal is the exact opposite of its position in the complaint, [BSR] apparently raised neither estoppel nor judicial admissions below, as the trial court made no mention of either in its order." *Id*. at 301, 737 S.E.2d at 800. This Court held that the consent order had established that Article II's reference to the BLSP's being "fully operational" and having a "full permit" from DENR was not a condition precedent to the parties' obligations under the Contract:

> The relevant language from the Agreement states that "Handy shall provide full wastewater service to BSR under this Agreement beginning no later than 90 days after the Badin Lake Area Sewer System is granted a full permit by . . . (DENR) and is fully operational." . . . In [Handy's] complaint, it requested immediate access to [BSR's] lots in order to begin performance. . . . If [BSR] had been correct that it was a condition precedent, [Handy] would not have been entitled to specific performance as it had requested. Thus, the issue of whether Article II was a condition precedent was a central part of the controversy. . . . By requiring immediate performance of the contractual duties by both parties, the consent order necessarily disposed of any potential condition precedent.

BADIN SHORES RESORT OWNERS ASS'N, INC. V. HANDY SANITARY DIST.

*Opinion of the Court*

*Id.* at 302-03, 737 S.E.2d at 800 (citations omitted).

On 20 November 2015, BSR filed suit against Handy, seeking damages for claims arising out of Handy's increase of the monthly rate per occupied lot for provision of wastewater services. BSR's complaint cited the language in Article VI, stating that the per lot rate paid by BSR "may be adjusted from time to time" but that the "base rate charged to BSR will not increase in any event before the Badin Lake Area Sewer System is online and operational." BSR alleged that the "BLSP is not online and operational as those terms were understood in the [contract]." BSR sought damages for breach of contract, violation of the requirements of N.C. Gen. Stat. § 130A-64, and unfair and deceptive trade practices. BSR also sought a declaratory judgment establishing its rights under the parties' contract.

On 28 December 2015, BSR filed a "Motion to Interplead Funds in Dispute," in which it asked to "be entitled to pay the amount in dispute . . . into an interest bearing trust account . . . until the Court may resolve the dispute regarding the increase." Following a hearing conducted on 19 January 2016, the trial court entered an order on 21 March 2016 denying BSR's motion and making "mixed findings of fact and conclusions of law," including the following:

> 2. [BSR] filed a motion for interpleader in this case pursuant to Rule 22 of the North Carolina Rules of Civil Procedure, alleging, among other things, that [Handy's] proposed rate increase is violative of the parties' contract[.]

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

. . .

> 3. At the request of the Court, counsel for both parties conducted a conference telephone call with Michael Leggett, the Environmental Engineer with the NCDENR Division of Water Resources. Counsel reported to the Court by email that Mr. Leggett stated that [the BLSP] received its initial permit in 2009, which set out the scope of the full Project. The first certification, for the force main and pump stations, was issued in the summer of 2011. Eight additional partial certifications have been issued for the Badin Lake sewer system and those certified portions are operational. Mr. Leggett agreed with counsel for Handy that <u>the system described in the permit is capable of performing its intended function</u>; however, only partial certifications have been issued to date.

(emphasis added).

On 3 February 2016, Handy filed an answer in which it asserted various defenses and moved to dismiss BSR's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2016) for failure to state a claim upon which relief could be granted. Handy then filed a motion for judgment on the pleadings pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(c) (2016) on 21 October 2016. On 3 January 2017, BSR filed a motion seeking summary judgment on its claim for a declaratory judgment. In support of its summary judgment motion, BSR submitted documents produced during discovery, including the parties' responses to interrogatories and requests for production of documents. On 10 January 2017, Handy filed a motion seeking summary judgment in its favor on all of BSR's claims.

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

On 17 January 2017, a hearing was conducted on BSR's motion for summary judgment on its declaratory judgment claim, and on Handy's motions for summary judgment on all claims and for dismissal of BSR's complaint under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) and 12(c). On 26 January 2017, the trial court entered an order granting summary judgment for Handy and dismissing BSR's complaint. BSR noted an appeal to this Court.

Standard of Review

Pursuant to N.C. Gen. Stat. § 1A-1, Rule 56(c) (2016), summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (internal quotation marks omitted). In addition:

> The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact. This burden may be met by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim.

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

*DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (internal quotation marks and citations omitted).

"[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the [non-moving] party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 445, 448, 579 S.E.2d 505, 507 (2003) (internal quotation omitted). Thus, "when a moving party has met his burden of showing that he is entitled to an award of summary judgment in his favor, the non-moving party . . . must . . . forecast sufficient evidence to show the existence of a genuine issue of material fact in order to preclude an award of summary judgment." *Steele v. Bowden*, 238 N.C. App. 566, 577, 768 S.E.2d 47, 57 (2014) (citations omitted). *See also* N.C. Gen. Stat. § 1A-1, Rule 56(e) (2016):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

"The standard of review for summary judgment is *de novo*." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment'

BADIN SHORES RESORT OWNERS ASS'N, INC. V. HANDY SANITARY DIST.

*Opinion of the Court*

for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

<u>Timeliness of Defendant's Motion for Summary Judgment</u>

BSR argues first that with respect to BSR's claims for breach of contract, violation of the provisions of N.C. Gen. Stat. § 130A-64, and unfair and deceptive trade practices, Handy's summary judgment motion was "not properly before the trial court." BSR correctly notes that N.C. Gen. Stat. § 1A-1, Rule 56(c) provides that a summary judgment "motion shall be served at least 10 days before the time fixed for the hearing" and that, in the present case, Handy's summary judgment motion was served seven days before the hearing, rather than ten days. We conclude, for several reasons, that BSR is not entitled to relief on this basis.

It is well-established that "[a] party who is entitled to notice of a motion may waive notice. A party ordinarily does this by attending the hearing of the motion and participating in it." *Collins v. Highway Commission*, 237 N.C. 277, 283, 74 S.E.2d 709, 714-15 (1953) (citation omitted). In the present case, BSR attended the hearing and participated in it, without requesting a continuance, objecting, or arguing that BSR needed more time to prepare. In fact, after informing the court that Handy's motion was served seven days prior to the hearing rather than the ten days that is required by statute, BSR's counsel immediately added, "I don't think this is important

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

necessarily." BSR's participation in the hearing is similar to the facts of cases such as *Raintree Corp. v. Rowe*, 38 N.C. App. 664, 248 S.E.2d 904 (1978), in which this Court held that:

> At the hearing on the motions to dismiss, plaintiff stipulated to the use of documents outside the pleadings, [and] participated in oral arguments. . . . Plaintiff did not make a timely objection to the hearing on 15 September 1977. Plaintiff did not request a continuance. Plaintiff did not request additional time to produce evidence pursuant to Rule 56(f). On the contrary, plaintiff participated in the hearing through counsel. The 10-day notice required by Rule 56 can be waived by a party. The notice required by this rule is procedural notice as distinguished from constitutional notice required by the law of the land and due process of law. By attending the hearing of the motion on 15 September 1977 and participating in it and failing to request a continuance or additional time to produce evidence, plaintiff waived any procedural notice required.

*Raintree*, 38 N.C. App. at 667-668, 248 S.E.2d at 907 (citation omitted). We conclude that BSR waived any objection to the timeliness of the service of Handy's summary judgment motion.

Moreover, it is axiomatic that in order to " 'obtain relief on appeal, an appellant must not only show error, but . . . must also show that the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action.' " *Bogovich v. Embassy Club of Sedgefield, Inc.*, 211 N.C. App. 1, 14, 712 S.E.2d 257, 266 (2011) (quoting *Starco, Inc. v. AMG Bonding and Ins. Services*, 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996)). Thus, a party is not

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

entitled to relief where the party "makes no argument, showing, or claim that [the party] was prejudiced in any way by" an error. *Crutchfield v. Crutchfield*, 132 N.C. App. 193, 196, 511 S.E.2d 31, 34 (1999). In addition, Rule 61 provides that:

> No error in either the admission or exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action amounts to the denial of a substantial right.

N.C. Gen. Stat. § 1A-1, Rule 61 (2016).

Furthermore, the hearing was conducted in order to rule on Handy's motion for judgment on the pleadings pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(c), which provides in relevant part that:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (emphasis added).

N.C. Gen. Stat. § 1A-1, Rule 12(c) (2016).

In this case, matters outside the pleadings were presented to the trial court, which required the court to treat Handy's motion under Rule 12(c) as a summary judgment motion.

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

At the hearing, BSR did not request a continuance, object, or ask for more time to prepare. In addition, BSR does not argue that it was prejudiced by the fact that the hearing on Handy's summary judgment motion was conducted seven days after service, rather than the statutorily required ten days. We conclude that (1) the trial court appropriately treated Handy's motion under Rule 12(c) as a motion for summary judgment; (2) BSR waived any objection to the fact that Handy's motion was served seven days before the hearing, rather than ten days before; and (3) BSR has failed to establish that it suffered any prejudice. As a result, BSR is not entitled to relief on the basis of this argument.

## Breach of Contract

BSR argues that the trial court erred by granting summary judgment for Handy on its claim for breach of contract. BSR alleges that the evidence before the trial court created a genuine issue of material fact as to the reasonableness of the rate hike, and that the trial court erred as a matter of law in its interpretation of the contractual requirement that the rate not be raised until the BLSP was "online and operational." We conclude that these arguments lack merit.

## Reasonableness of Rate Hikes

BSR argues that the trial court erred by granting summary judgment for Handy, on the grounds that the evidence raised genuine issues of material fact as to whether the rate increase imposed by Handy was reasonable. We disagree.

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

Preliminarily, we review certain features of sanitary districts. N.C. Gen. Stat. § 130A-47(a) (2016) provides that "[f]or the purpose of preserving and promoting the public health and welfare, the Commission may create sanitary districts without regard for county, township or municipal lines." (N.C. Gen. Stat. § 130A-2(1a) (2016) defines "Commission" as "the Commission for Public Health."). Pursuant to N.C. Gen. Stat. § 130A-50(b) (2016), the "sanitary district board shall be composed of either three or five members as the county commissioners in their discretion shall determine." This statute also provides that the sanitary district board members shall serve terms of either two or four years, must reside in the sanitary district, and are "elected at each biennial election." N.C. Gen. Stat. § 130A-64 (2016) authorizes a sanitary district board to impose service charges for wastewater treatment:

> A sanitary district board shall apply service charges and rates based upon the exact benefits derived. These service charges and rates shall be sufficient to provide funds for the maintenance, adequate depreciation and operation of the work of the district. If reasonable, the service charges and rates may include an amount sufficient to pay the principal and interest maturing on the outstanding bonds and, to the extent not otherwise provided for, bond anticipation notes of the district. Any surplus from operating revenues shall be set aside as a separate fund to be applied to the payment of interest on or to the retirement of bonds or bond anticipation notes. The sanitary district board may modify and adjust these service charges and rates.

It is an "accepted principle . . . that courts may not interfere in a given case with the exercise of discretionary powers conferred on these local administrative

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

boards for the public welfare, unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion." *Halifax Paper Co. v. Roanoke Rapids Sanitary Dist.*, 232 N.C. 421, 430, 61 S.E.2d 378, 385 (1950) (internal quotation marks omitted).

In support of its motion for summary judgment, Handy submitted the affidavit of Darrell Hinnant, Handy's general manager, in which Mr. Hinnant averred in relevant part that:

> 2. . . . [Handy] is a quasi-municipal corporation, and its Board is "a body politic and corporate," N.C.G.S. 130A-55.
>
> 3. The governing board of the [Handy] Sanitary District sets water and sewerage rates in accordance with statute, and the fixing of said rates is a legislative action on the part of the board. . . .
>
> 4. Handy has operated a water distribution system in parts of Davidson, Montgomery, and Randolph counties since the 1970s. It has, within the past 15 years, undertaken to provide wastewater services as well, and has developed the . . . (BLSP) to provide wastewater services in areas surrounding Badin Lake. . . .
>
> 5. . . . As part of the BLSP, Handy and BSR entered into a contract for the supply of sewer system services by the [Handy] Sanitary District to [BSR]. . . . Handy initially charged BSR a bulk rate . . . [of] $30 per occupied lot within BSR. Unlike other users of the sewage system provided by [Handy, BSR] was never charged, and is not now being charged with any usage amount per gallon over the bulk rate charged.
>
> 6. Handy, in accordance with paragraph VI of the contract, notified BSR that the monthly rate charged for sewerage

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

service to each lot in [BSR's] development would increase from the original contract rate of $30 to $58.00. This increase in rates is the same as the increase throughout the sanitary district and is a reflection of the costs of operating the sewerage system, including the debt service for the project.

7. [Handy] sets its rates for sewage by calculating the amount necessary to charge each user in order to pay for the service; that is, the rate is set by the board, at a public hearing, in the amount necessary for the sanitary district to pay for the cost of furnishing sewer service to all its customers. In 2015, the Handy Sanitary District board initially believed that a rate of $66 per month would be necessary to cover the expenses of the Sanitary District's sewerage service. . . . In June 2015, however, it became apparent that the loan that the Handy Sanitary District had obtained from the State of North Carolina to pay for the completion of the sewer project could be repaid without an interest charge. With that reduction in expenses for the Sanitary District, the adopted rate per customer became $58.00 per month in place of the $66.00 originally proposed. This rate, which is in place today, was again calculated in an amount sufficient to pay the expenses of the sanitary district. The calculations supporting the setting of that rate appear in [Handy's] responses to requests for production labeled 8-2.

8. The base rate charged [BSR] for sewerage service is identical to that charged for every other customer receiving such service, with the exception that [BSR] does not pay any usage rate over the base rate charged. That is, [BSR] is charged a slightly more favorable rate than any other customer of [Handy].

9. Handy Sanitary District's sewage service would not be able to continue to operate if rates charged were lower than the $58 rate currently in place.

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

Mr. Hinnant's affidavit established that, as Handy's general manager, he was an appropriate spokesperson for Handy. The affidavit explained the criteria by which Handy set the current per lot rate for sewer service. We conclude that Mr. Hinnant's affidavit constituted *prima facie* evidence that the rate set by Handy was reasonable. "If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial." *Will of Jones*, 362 N.C. at 573, 669 S.E.2d at 576. It is thus well-established that:

> "[A]s a general rule, upon a motion for summary judgment, supported by affidavits, 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.' "

*Pacheco*, 157 N.C. App. at 448, 579 S.E.2d at 507 (quoting *Spinks v. Taylor*, 303 N.C. 256, 263, 278 S.E.2d 501, 505 (1981) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(e)). "To hold otherwise . . . would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment." *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 64, 414 S.E.2d 339, 342 (1992).

On appeal, BSR argues that the parties produced conflicting evidence raising a genuine issue of material fact regarding the reasonableness of Handy's rate increase. In support of this contention, BSR directs our attention to the fact that in

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

its complaint and in its responses to Handy's interrogatories, BSR alleged that the rate set by Handy was unreasonable. BSR has not identified any evidence that it presented in support of its contentions. BSR instead simply contends that the allegations in its verified complaint constitute competent evidence on the issue of the reasonableness of Handy's rate increase.

It is true that a " 'verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein.' " *Spinks*, 303 N.C. at 264, 278 S.E.2d at 505-06 (quoting *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972)). In addition, "verified responses . . . [to] Interrogatories and Requests for Admission . . . are also appropriate for the court's consideration in ruling on summary judgment." *In re Dispute over the Sum of $375,757.47*, 240 N.C. App. 505, 511, 771 S.E.2d 800, 805 (2015) (citation omitted). However, the facts of the present case do not support BSR's contention that the allegations in its complaint or its answers to interrogatories should be treated as statements in an affidavit. BSR alleged in its complaint "upon information and belief" that the rate increase imposed by Handy was the result of Handy's "mismanagement of the BLSP project." In its response to Handy's interrogatory, BSR similarly asserted that the increase was not based upon increased costs incurred by Handy, was not within "one and one-half percent (1.5%) of the median household income,"

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

and that the increase was the result of Handy's "mismanagement of the [BLSP.]" BSR did not, however, support its allegations with evidence pertaining to any of these contentions, and thus failed to establish that these assertions were "made on personal knowledge," that they stated "facts as would be admissible in evidence," or that BSR would be "competent to testify to the matters stated therein." *Id.* For the reasons discussed above, we conclude that the trial court did not err by concluding that there were no genuine issues of material fact regarding the reasonableness of Handy's rate hike.

### "Online and Operational"

BSR also argues that the trial court erred by granting summary judgment for Handy, on the grounds that the court failed to properly interpret the language in the Contract. Specifically, BSR challenges the court's interpretation of the contractual provision in Article VI stating that BSR would initially be charged a monthly rate of $30.00 per occupied lot, that Handy may change the rate "from time to time . . . in the ordinary course of Handy's business," but that Handy would not increase the per lot rate "before the [BLSP] is online and operational." BSR contends that the BLSP will not be "online and operational" until it has received a final permit from DENR. We conclude that this argument lacks merit.

"In construing contracts ordinary words are given their ordinary meaning unless it is apparent that the words were used in a special sense. The terms of an

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

unambiguous contract are to be taken and understood in their plain, ordinary and popular sense." *Harris v. Latta*, 298 N.C. 555, 558, 259 S.E.2d 239, 241 (1979) (internal quotation marks and citations omitted). The meaning of operational is "[e]ngaged in operation; able to function." BLACK'S LAW DICTIONARY 1124 (8th ed. 2004).

The record establishes that the parties executed the Contract in March, 2009. As discussed above, in 2011 the parties entered into a consent judgment, pursuant to which Handy began to provide wastewater services to BSR. Four years later, in June, 2015, Handy informed BSR's customers that the monthly per lot rate was being raised. At that point, certifications had been issued by DENR for the individual sections of the BLSP. BSR does not dispute that Handy serves between 900 and 1000 customers in BSR, and more than 2350 customers in the BLSP. BSR also concedes that Handy did not raise its rates until the State required Handy to begin repaying the construction loan that enabled Handy to build the BLSP, which was several years after Handy began providing wastewater services to BSR. In addition, the affidavit of Handy's general manager avers in relevant part that:

> 10. The NCDENR Division of Water Services issued the [BLSP] its initial permit in 2009. This permit set out the full scope of the project. The first certification, for the force main and pump stations, was issued in the summer of 2011. Eight additional partial certifications have been issued for the [BLSP], and those certified portions are now in operation. [Handy] has been collecting and treating

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

sewage from [BSR] for more than five years now, and its sewerage system is online [and] fully operational.

Thus, at the time that Handy implemented a rate hike, the construction was substantially complete and the BLSP was operating to provide wastewater services to BSR. And, as discussed above, in its order denying BSR's motion for interpleader, the court found that the environmental engineer for DENR "agreed with counsel for Handy that the system described in the permit is capable of performing its intended function." We conclude that Handy did not raise its base rate until after the BLSP was "online and operational" in the ordinary meaning of the term.

In urging us to reach a different conclusion, BSR contends that the BLSP cannot be considered to be "operational" until it has received a final certification from DENR. BSR "recognizes that the plain meaning of the words 'online' and 'operational' might provide some support for [Handy's] position." BSR argues, however, that the context of the Contract suggests that the parties intended a specialized meaning, under which Handy's receipt of a full permit from DENR, rather than its completion of the BLSP and provision of wastewater services to more than 2300 customers, determines when the BLSP is "operational."

BSR asserts that "the term 'operational' cannot be equivalent to the mere 'connection' of [BSR] to the [BLSP]" and that "[i]f only connection was required, the parties would have expressed that requirement[.]" BSR then argues that, if the Contract had been interpreted so that the BLSP were deemed to be "operational"

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

immediately upon the connection of BSR's customers to Handy's wastewater service, Handy might then have attempted improperly to raise the per lot rate prior to completion of the BLSP. BSR devotes much of this argument to challenging the idea that Handy could have raised its rates as soon as BSR's customers were connected to Handy. It is undisputed, however, that Handy *did not* attempt to raise the per lot rate immediately upon connection. Because Handy never asserted a right to raise the per lot rate based merely upon connection to its system, we find it unnecessary to consider whether Handy could reasonably have taken such a position in the past.

BSR also argues that the position taken by Handy in *Handy Sanitary* was inconsistent with an interpretation of the Contract that would have allowed Handy to raise the per lot rate upon connection. *Handy Sanitary* did not address the meaning of "online and operational." Moreover, as discussed above, Handy did not impose a rate increase upon connection, which diminishes the legal relevance of this argument.

Furthermore, we observe that there are two undisputed circumstances that support both BSR's contention that it would have been improper for Handy to raise its per lot rate in 2011, as well as Handy's decision to impose a rate increase in 2015. First, Handy did not raise the per lot rate until construction was completed and the State required Handy to repay its construction loan. This is an external, "real world" circumstance that created an additional expense for Handy and supports its need to

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

increase rates. Secondly, in 2011, Handy connected to the 900 - 1000 customers in BSR. The mathematical calculation of a rate increase imposed at that time would have involved dividing the additional expense by some 900 customers. In contrast, by the time Handy actually sought a rate increase, it was serving more than 2350 customers, which allowed Handy to distribute the increased cost among a greater number of customers, thus reducing the necessary per lot increase. These two circumstances -- the additional expense of repaying the construction loan, and the increased number of customers -- bear a substantive relationship to Handy's need to increase its per lot rate. In contrast, Handy's receipt of its final permit from DENR has no apparent relationship to Handy's expenses or its need to raise rates.

We conclude that at the time Handy raised its per lot rate, the BLSP was "online and operational" in the ordinary meaning of those words. We further conclude that the trial court did not err by rejecting BSR's proposed interpretation of the Contract, and that BSR is not entitled to relief on the basis of this argument.

BSR's Claim for Violation of N.C. Gen. Stat. § 130A-64

BSR also brought a claim against Handy for violation of N.C. Gen. Stat. § 130A-64(a) (2016), which provides in relevant part that a "sanitary district board shall apply service charges and rates based upon the exact benefits derived. These service charges and rates shall be sufficient to provide funds for the maintenance, adequate

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

depreciation and operation of the work of the district. . . . The sanitary district board may modify and adjust these service charges and rates."

In its complaint, BSR alleged "upon information and belief" that Handy's rate increase was not reasonable, having been required by Handy's "mismanagement" of the BLSP project. For the reasons discussed in connection with BSR's claim for breach of contract, we conclude that Handy produced *prima facie* evidence that the rate increase was reasonable, and that BSR failed to respond with factual evidence, as opposed to unsubstantiated allegations, that the rate increase was unreasonable. We conclude that the trial court did not err by granting summary judgment for Handy on this claim.

### BSR's Claim for Unfair and Deceptive Trade Practices

BSR argues next that the trial court erred by granting summary judgment for Handy on BSR's claim for unfair and deceptive trade practices. Much of BSR's argument on this issue is devoted to its contention that the court erred by considering Handy's motion for summary judgment, on the grounds that it was not served ten days prior to the hearing. For the reasons discussed above, we reject this argument.

BSR then argues that a sanitary district is not entitled to sovereign immunity, and notes that, pursuant to N.C. Gen. Stat. § 130A-55 (2016), a "sanitary district board shall be a body politic and corporate and may sue and be sued in matters

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

relating to the sanitary district." BSR thus frames the issue as being whether a sanitary district is entitled to immunity from all lawsuits against it.

However, the question presented by Handy's summary judgment motion was not whether a sanitary district was generally immune from suit, but whether it could properly be sued for unfair and deceptive trade practices. In this regard, we observe that "[sanitary] districts have been defined as quasi-municipal corporations." *State ex rel. East Lenoir Sanitary Dist. v. Lenoir*, 249 N.C. 96, 100, 105 S.E.2d 411, 414 (1958) (citing *Halifax Paper Co. v. Roanoke Rapids Sanitary Dist.*, 232 N.C. 421, 61 S.E.2d 378 (1950)). "We have previously held that 'the consumer protection and antitrust laws of Chapter 75 of the General Statutes do not create a cause of action against the State, regardless of whether sovereign immunity may exist.'" *Rea Constr. Co. v. City of Charlotte*, 121 N.C. App. 369, 370, 465 S.E.2d 342, 343 (1995) (quoting *Sperry Corp. v. Patterson*, 73 N.C. App. 123, 125, 325 S.E.2d 642, 644 (1985)). We conclude that, regardless of whether a sanitary district is entitled to sovereign immunity, as a quasi-municipal corporation it cannot be sued for unfair and deceptive trade practices.

Moreover, "[i]t is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1. . . . '[A] plaintiff must show substantial aggravating

BADIN SHORES RESORT OWNERS ASS'N, INC. v. HANDY SANITARY DIST.

*Opinion of the Court*

circumstances attending the breach to recover under the Act, which allows for treble damages.'" *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992) (quoting *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989)). In this case, BSR's complaint alleges "upon information and belief" that Handy misrepresented the expected total cost of the BLSP. BSR did not support this contention with any evidence before the trial court, and does not argue on appeal that Handy's alleged breach of contract was accompanied by "substantial aggravating circumstances." We conclude that the trial court did not err by granting summary judgment for Handy on BSR's claim for unfair and deceptive trade practices.

## Conclusion

For the reasons discussed above, we conclude that the trial court did not err by granting summary judgment for defendant and that its order should be affirmed.

AFFIRMED.

Judges STROUD and ARROWOOD concur.