MERRITT, FLEBOTTE, WILSON, WEBB & CARUSO, PLLC, A North Carolina Limited Liability Corporation, Plaintiff v. AARON C. HEMMINGS, KELLY A. STEVENS, and HEMMINGS & STEVENS, P.L.L.C., A North Carolina Limited Liability Corporation, Defendants and Third Party Plaintiffs v. PRE-PAID LEGAL SERVICES, INC., JAMES MERRITT, DANIEL R. FLEBOTTE, JOSEPH M. WILSON, JOY RHYNE WEBB, and HEATHER CARUSO, Third Party Defendants

No. COA08-1333

(Filed 5 May 2009)

**1. Appeal and Error— preservation of issues—raised in complaint and argued at trial**

Arguments concerning breach of contract that were asserted in the complaint and argued to the trial court were considered on appeal, but arguments that were not asserted in the pleadings nor argued before the trial court were not considered.

**2. Agency— office manager of law firm—social remarks—no issue of fact as to agency**

Summary judgment was properly granted for plaintiffs in an action arising from the departure of plaintiffs from defendants' law firm where there had been a settlement, plaintiffs filed an action asserting that defendants failed to pay amounts owed under the agreement, and defendants asserted that plaintiffs' breaches of the agreement excused their nonperformance. Defendants contended that plaintiffs violated a nondisparagement clause in the settlement through the remarks of an office manager during a social conversation late at night in a bar, but failed to produce any evidence raising an issue of fact as to whether the office manager acted as plaintiffs' agent during that conversation.

**3. Compromise and Settlement— confidentiality agreement— internal email**

An internal email from plaintiffs' office manager to members of the law firm did not violate a confidentiality clause in a settlement agreement arising from defendants' departure from plaintiffs' law firm and the settlement of accounts. Such communications are permitted under the settlement agreement, and the trial court did not err by granting summary judgment for plaintiffs.

MERRITT, FLEBOTTE, WILSON, WEBB & CARUSO, PPLC v. HEMMINGS

[196 N.C. App. 600 (2009)]

**4. Fraud— ledger showing expenses—no accompanying demand**

Plaintiffs did not breach a settlement agreement arising from the departure of some attorneys from a law firm by making a fraudulent demand for payment of expenses where defendants asked plaintiffs for information about expenses and plaintiffs provided a ledger. The listing was not accompanied by a letter, invoice, or any demand or request. The trial court did not err by entering summary judgment for plaintiffs.

**5. Slander— per se—statute of limitations**

Defendants' counterclaim for slander per se arising from the departure of attorneys from a law firm was outside the statute of limitations, and the trial judge did not err by granting summary judgment for plaintiff.

**6. Privacy— invasion—website—biographical information—links removed**

The trial court did not err by granting summary judgment for plaintiffs on a counterclaim for invasion of privacy arising from the departure of attorneys from a law firm and a settlement agreement. Defendants contended that their images and bio-graphical information from plaintiffs' website could be accessed by Internet search engines, but plaintiffs did not own the server which contained the information, they had removed the links to the information from their website and it was not possible to go from plaintiffs' website to the information, plaintiffs did not intend to preserve the files, and defendants offered no evidence that the public had accessed the files. Defendants did not articulate how this would constitute misappropriation of their image or biography for any commercial purpose.

Appeal by Defendants/Third Party Plaintiffs from judgment entered 9 June 2008 by Judge Ronald L. Stephens in Durham County Superior Court. Heard in the Court of Appeals 24 March 2009.

*Glenn, Mills, Fisher & Mahoney, P.A., by William S. Mills, for Plaintiff-Appellees/Third Party Defendant-Appellees.*

*Crawford & Crawford, LLP, by Robert O. Crawford, III, and Heather J. Williams; and Hemmings & Stevens, P.L.L.C., by Aaron C. Hemmings and Kelly A. Stevens, for Defendant-Appellants/Third Party Plaintiff-Appellants.*

BEASLEY, Judge.

Defendants/Third Party Plaintiffs (Aaron C. Hemmings, Kelly A. Stevens, and Hemmings & Stevens, P.L.L.C.) (hereafter Defendants) appeal from an order denying their motion to compel discovery and granting summary judgment in favor of Plaintiff-Appellees/Third Party Defendant-Appellees (Merritt, Flebotte, Wilson, Webb & Caruso, PLLC; Pre-Paid Legal Services, Inc., James Merritt, Daniel R. Flebotte, Joseph M. Wilson, Joy Rhyne Webb, and Heather Caruso) (hereafter Plaintiffs). We affirm.

The relevant facts may be summarized as follows: Defendants Aaron Hemmings and Kelly Stevens are attorneys who are licensed to practice law in North Carolina. They previously were associates at the firm of Browne, Flebotte, Wilson & Webb, (Brown, Flebotte) the predecessor of Plaintiff law firm Merritt, Flebotte, Wilson, Webb & Caruso (Merritt, Flebotte). In September 2005 Hemmings and Stevens left Brown, Flebotte to start their own law practice (Hemmings & Stevens). Defendants kept some former clients after they left Plaintiff law firm, and disputes arose among the parties about division of attorney's fees and reimbursement of client costs that had been advanced by Brown, Flebotte. These disagreements led to litigation, which ended on 24 February 2006, when the parties executed a settlement agreement that resolved the parties' claims and counterclaims, addressed disbursement of fees and repayment of costs, and provided that its terms would remain confidential and that the parties would not "intentionally or knowingly make any false statements about each other or statement[s] which would be considered defamatory, or injurious to the reputation of the other parties."

On 11 June 2007, Plaintiffs filed a new lawsuit against Defendants, asserting that Defendants had failed to pay Plaintiffs the money owed under the settlement agreement, and had improperly disbursed attorney's fees to themselves. Plaintiffs sought an accounting of the attorney's fees received in cases covered by the settlement agreement, damages for breach of contract, and an injunction requiring Defendants to retain in trust the fees and costs for cases covered by the settlement agreement.

On 24 July 2007, Defendants filed an answer denying the material allegations of Plaintiffs' complaint and asserting that Plaintiffs' "substantial and material" breaches of the parties' contract excused their non-performance and refusal to make payments owed under the settlement agreement. With their answer, Defendants also filed a coun-

terclaim against Plaintiffs for breach of contract, slander *per se*, and invasion of privacy or misappropriation of likeness. Defendants alleged: (1) that after Defendants left Plaintiff law firm, the Plaintiffs' website continued to list Defendants as attorneys with the firm; (2) that Plaintiffs had made a "demand" for repayment of "fraudulent expenses", and; (3) that Plaintiffs had made "false and defamatory" statements about Defendants.

In addition, Defendants filed a third party complaint against James Merritt, Daniel R. Flebotte, Joseph M. Wilson, Joy Rhyne Webb, Heather Caruso, and Pre-Paid Legal Services, Inc. The third party complaint made essentially the same assertions as the counterclaim, and sought similar relief. Defendants later dismissed their claims against Pre-Paid Legal Services, which is not a party to this appeal. Defendants also moved for dismissal of Plaintiffs' claims for insufficiency of service of process, failure to state a claim for relief, previous dismissal of the same claims, false and scandalous allegations, *res judicata* and collateral estoppel; their motions to dismiss were denied by the trial court on 11 September 2007.

On 26 September 2007 Plaintiffs filed a reply to Defendants' counterclaim and an answer to Defendants' third party complaint. Plaintiffs denied the material allegations, asserted defenses, and moved for dismissal of Defendants' claims. On 28 March 2008 Defendants filed a motion to compel discovery, seeking an order compelling Pre-Paid Legal Services to respond to Defendants' interrogatories and requiring Defendant Joy Webb to answer questions about the firing of an employee. On 16 May 2008 Plaintiffs filed a motion for summary judgment on all claims and counterclaims.

On 9 June 2008 the trial court entered an order granting Plaintiffs' motions for summary judgment and denying Defendants' motion to compel discovery. The order granted summary judgment in favor of Plaintiffs, ordered Defendants to pay $256,834 for attorney's fees and $17,642.76 for costs advanced, and dismissed all of Defendants' counterclaims, defenses, and third party claims against Plaintiffs. Defendants have appealed the denial of their motion to compel discovery, the dismissal of their claims against Plaintiffs, and the entry of summary judgment in favor of Plaintiffs.

## Standard of Review

Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). "The purpose of the rule is to avoid a formal trial where only questions of law remain and where an unmistakable weakness in a party's claim or defense exists. . . . '[A]n issue is genuine if it is supported by substantial evidence,' which is that amount of relevant evidence necessary to persuade a reasonable mind to accept a conclusion. . . . '[A]n issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action.' " *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 123-24 (2002) (quoting *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002); and *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972)) (citations omitted).

"The moving party bears the initial burden of coming forward with a forecast of evidence tending to establish that no triable issue of material fact exists." *Briley v. Farabow*, 348 N.C. 537, 543, 501 S.E.2d 649, 653 (1998) (citation omitted). "The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Collingwood v. G. E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citation omitted). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2007).

"When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citations omitted). "All inferences of fact must be drawn against the movant and in favor of the nonmovant." *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992) (citations omitted).

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to

testify to the matters stated therein." Rule 56(e). "A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972) (citations omitted).

"Our Supreme Court has stated that a mediated settlement agreement constitutes a valid contract between the settling parties which is 'governed by general principles of contract law.' " *McClure Lumber Co. v. Helmsman Constr., Inc.*, 160 N.C. App. 190, 197, 585 S.E.2d 234, 238 (2003) (quoting *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001)). In resolving the issues raised on appeal, we treat the settlement agreement as a contract.

---

Defendants argue first that the trial court erred by granting summary judgment in favor of Plaintiffs on the parties' claims and counterclaims for breach of contract. We disagree.

As discussed above, "[t]he party moving for summary judgment has the burden of showing that there is no triable issue of material fact." *Nicholson v. American Safety Utility Corp.*, 346 N.C. 767, 774, 488 S.E.2d 240, 244 (1997) (citations omitted). "If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted).

In the instant case, Defendants do not dispute that they have failed to pay the full amount of attorney's fees due to Plaintiffs under the terms of the contract. Defendants assert that their nonperformance is excused by Plaintiffs' substantial and material breaches of the contract. Defendants contend that they presented evidence of three breaches of the contract. With respect to each of these we conclude that (1) Plaintiffs supported their summary judgment motion with evidence showing that Defendants could not prove that there had been a breach of contract, and; (2) Defendants failed to produce evidence showing any issue of material fact.

[1] Preliminarily, we address the scope of our review. In their answer and counterclaim to Plaintiffs' complaint, Defendants asserted that Plaintiffs had materially and substantially breached the parties' settlement agreement by breaching the contract's non-disparagement clause and by making a fraudulent demand for expense payments. At

the summary judgment hearing, Defendants relied on the same allegations. On appeal Defendants again argue that Plaintiffs breached the contract by violating the non-disparagement clause and by demanding expenses that were not actually covered under the contract. We will address Defendants' arguments on these issues, which were asserted in Defendants' complaint and argued to the trial court.

However, on appeal Defendants also argue that Plaintiffs violated the parties' contract by "failing to timely accept or reject payments under the contract" and by "failing to act in good faith under the contract." These alleged breaches of contract were neither asserted in Defendants' pleadings nor argued before the trial court. The Supreme Court "has long held that issues and theories of a case not raised below will not be considered on appeal[.]" *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001) (citation omitted). *See also* N.C.R. App. P. 10(b)(1) ("to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make . . . [and] obtain[ed] a ruling upon the party's request, objection or motion"). Accordingly, we do not consider these arguments.

[2] Defendants contend that the evidence raised genuine issues of material fact about whether the Plaintiffs violated a "non-disparagement" clause in the settlement agreement. This clause states that "the parties agree that they will not intentionally or knowingly make any false statements about each other or statement[s] which would be considered defamatory, or injurious to the reputation of the other parties." Accordingly, the clause does not apply to every "disparaging" remark, but only to statements of parties, and only if the party intentionally (1) makes a false statement about another party, or (2) makes a statement about another party that is defamatory or injurious to the party's reputation. " 'Presumably the words which the parties select [for inclusion in a contract are] deliberately chosen and are to be given their ordinary significance.' " *Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 405, 584 S.E.2d 731, 738 (2003) (quoting *Briggs v. American & Efird Mills, Inc.*, 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960)).

Defendants assert that Brad Rhyne, the office administrator for Plaintiff law firm, violated the clause in a conversation with Adrienne Lopez, a social acquaintance of his. Lopez's deposition testimony may be summarized in pertinent part as follows: Lopez previously dated

Aaron Hemmings. She knew Rhyne as a casual social acquaintance whom she sometimes saw at a bar or restaurant. Lopez recalled a conversation with Rhyne that took place at a Raleigh bar, "White Collar Crimes," between 9:00 p.m. and midnight on a night in February or March of 2006. Lopez had gone to the bar with friends. When she noticed that Rhyne was there, she approached him and they talked for about ten minutes. During the conversation, Rhyne commented that "Aaron had changed" and was "untrustworthy" and made another remark about which Lopez recalled only that it "suggested" that "Aaron did something wrong or committed some sort of crime when he left the firm."

Defendants assert that Plaintiffs are liable for Rhyne's late night comments at the White Collar Crimes bar, on the grounds that Rhyne was acting as an agent of Plaintiffs' law firm. However, it is axiomatic that a "principal is not liable when the agent is about his own business, or is acting beyond the scope and range of his employment. This is true irrespective of the intent of the agent." *Snow v. Equitable distribution Butts*, 212 N.C. 120, 123, 193 S.E. 224, 227 (1937).

In support of their summary judgment motion, Plaintiffs submitted the affidavits of James Merritt and Joy Rhyne Webb, who are members of Plaintiff law firm. Regarding Rhyne's employment and the scope of his authority, each averred that:

Brad Rhyne is an employee of the Merritt Flebotte [law firm.] He is the firm's office administrator. . . . He is not authorized to speak on behalf of the law firm of Merritt Flebotte except to employees in his role as human resource manager and to vendors of supplies and services to the firm. Other than those situations he has no authority to speak on behalf of the firm. Nor does he have the authority to sign checks for the firm or incur financial obligations. . . . [T]o the extent that Brad Rhyne spoke with Ms. Lopez about Aaron Hemmings at a bar in Raleigh during evening hours, it was not within the course and scope of his employment to have such a conversation.

"At this point, in our opinion, movant's evidence that [Rhyne] was not acting as the agent of the [Plaintiff law firm] within the scope of his authority at the times complained of carried the burden placed upon it by Rule 56(c) by showing the absence of one of the essential elements of [Defendants'] claim." *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 27-28, 209 S.E.2d 795, 803 (1974).

Defendants offer no evidence suggesting that Plaintiffs' description of Rhyne's job was inaccurate; nor do they contend that his conversation with Lopez might fall within his job description. Rather, Defendants assert that "Rhyne was the plaintiff's office administrator. As such, he was an agent of [Plaintiff law firm]. As their agent he was bound by the contractual non-disparagement clause whether he was sitting in his office or socializing at a bar." Defendants note that Rhyne had actual knowledge of the terms of the settlement agreement and was the brother of an attorney in Plaintiff law firm, but articulate no legal connection between these facts and the legal relationship of principal and agent. Defendants offered no evidence that the scope of Rhyne's employment included barroom gossip about members of the firm, and cite no appellate opinions suggesting that an employee is considered an "agent" of his employer even when he acts far outside the scope of his employment.

We conclude that Defendants failed to produce any evidence raising an issue of fact as to whether Rhyne acted as Plaintiffs' agent during his conversation with Lopez.

[3] Next, we consider Defendants' contention that Rhyne breached the contract by sending an email to members of Plaintiff law firm, in which he complained about Defendants' failure to reimburse Plaintiffs for some of the costs that had been advanced. The email was addressed to "Partners" and was received by three members of the firm; Joy Webb, Dan Flebotte, and Joey Wilson. It stated:

Dan, Please find the attached advanced costs reports for Kelly and Aaron. These reports show that on several cases such as [redacted] that they paid us $261.05 for reimbursement for advance costs when in fact they owed us $476.25. They need to go back and pay us for all the cases that they neglected to even pay a dime in advanced costs (to date they have only paid advanced costs in three out of twelve cases).

Even more frustrating, as I was talking to Jennie Phillips, I found out that Stephanie Minor and Tiffany Doster had been emailing Jennie to get the advanced costs of cases they settled. Even worse than that . . . several were cases that they have paid us for attorney fees already but have neglected to pay advanced costs . . . so they knew what the advanced costs were and just didn't pay it.

Please don't forget that we need the trust ledgers for the cases that they have already paid us for and for the ones that they send

us checks [for] in the future. If we could simply get the trust ledger, then we can see the disbursements that were made and verify the amount that we received. It's that simple.

The settlement agreement provides that the terms of the contract are to remain confidential, but that the parties "shall be allowed to discuss such provisions of this Agreement as is deemed necessary with those members, employees and financial/legal advisors on a need to know basis." As conceded by Defendants Stevens and Hemmings in their respective depositions, this clause permits "in-house" communication about the terms of the agreement.

In support of their summary judgment motion, Plaintiffs tendered a copy of the email showing that it was sent only to members of the firm, and the deposition of Rhyne, in which he testified that he sent the email only to the recipients shown on the copy of the email. Plaintiffs' evidence, which shows that the email was not a breach of the parties' agreement, made incumbent upon Defendants to respond with evidence raising an issue of fact about the email.

When Dan Flebotte, a member of Plaintiff law firm, received the email, he sent a copy to Defendants as part of their ongoing attempts to resolve issues arising from the settlement agreement. The email copy that Hemmings received did not include the names of the original recipients. On this basis, Defendants speculate that perhaps the email had been sent to others outside the firm. However, Defendants failed to produce <u>any</u> evidence that this had occurred, and offered no evidence to contradict Plaintiffs' sworn testimony that the email was only sent to members of the firm.

We conclude that the uncontradicted evidence was that this email was from an employee of Plaintiff law firm to members of the firm. Such communications are permitted under the settlement agreement. Defendants failed to demonstrate any genuine issue of material fact about this email. Accordingly, Plaintiffs were entitled to entry of summary judgment on this issue.

[4] Defendants also argue that Plaintiffs breached contract by making a "fraudulent" demand for payment of expenses. This argument is without merit.

The settlement agreement required Defendants to reimburse Plaintiffs for costs advanced in certain cases. It provided that Defendants would submit a check for the dollar amount that they determined was owed, and if Plaintiffs deposited or cashed the

check, they were deemed to have accepted Defendants' proposed amount of expenses. Defendants concede that Plaintiffs had no obligation under the settlement agreement to provide accounting information to Defendants, calculate costs, or otherwise assist Defendants in determining the amount of costs owed. Plaintiffs' role was simply to accept or reject the proffered amount. Nonetheless, Defendants asked Plaintiffs for information about expenses. In response, Plaintiffs used QuickBooks® software to generate a list of all checks written for the cases at issue and sent the resulting document to Defendants in a loose-leaf binder. It is this ledger which Defendants characterize as a "fraudulent demand" for money.

Defendants concede that the ledger does not include a demand for payment, that it was not accompanied by a letter demanding payment, and that Plaintiffs never expressed a "demand" for payment of the costs set out in the notebook. Thus, it is undisputed that Plaintiffs sent this listing unaccompanied by a letter, invoice, or any demand or request to be paid any particular amount.

We conclude that the evidence offered on summary judgment did not raise a genuine issue of material fact on Plaintiffs' alleged breaches of the settlement agreement. We specifically conclude that Defendants failed to produce evidence that (1) Rhyne's alleged remarks to Lopez were a breach of the settlement agreement; (2) Rhyne's email to members of the firm was a breach of the settlement agreement, or that; (3) the ledger records compiled by Plaintiffs constituted a "demand" or a "fraudulent demand" for money. As we have concluded that Defendants failed to present evidence that Plaintiffs had breached the settlement agreement, we do not reach the issues of whether the alleged breaches were material and substantial; or whether a material and substantial breach, if one had been shown, would have entitled Defendants to suspend payments due under the settlement agreement.

We conclude that the trial court did not err by entering summary judgment in favor of Plaintiffs on Defendants' assertions and defenses predicated on Plaintiffs' alleged breaches of the settlement agreement.

### Counterclaims

[5] Defendants brought counterclaims against Plaintiffs for slander *per se*, breach of contract, and for invasion of privacy and misappropriation of likeness. Defendants argue on appeal that the trial court

erred by entering summary judgment for Plaintiffs on these claims. We disagree.

We conclude that Defendants' counterclaim against Plaintiffs for slander *per* se was barred by the statute of limitations.

Under N.C. Gen. Stat. § 1-54(3) (2007), the statute of limitations for a claim of slander or libel is one year. On appeal, Defendants assert that "sometime in February-March 2006, Brad Rhyne . . . made derogatory statements in public to Adrianne Lopez, an acquaintance of Aaron Hemmings." In her deposition, Lopez testified that the allegedly slanderous remarks were part of a conversation with Rhyne in "February or March" of 2006. Defendants' counterclaim was not filed until 24 July 2007, which is several months after 31 March 2007.

Defendants argue that the cause of action did not accrue until Hemmings "discovered" the slanderous remarks. This argument has been rejected by our appellate courts. " 'To escape the bar of the statute of limitations, an action for libel or slander must be commenced within one year from the time the action accrues, G.S. 1-54(3), and the action accrues at the date of the publication of the defamatory words, regardless of the fact that plaintiff may discover the identity of the author only at a later date.' " *Gibson v. Mutual Life Ins. Co. of N.Y.*, 121 N.C. App. 284, 287, 465 S.E.2d 56, 58 (1996) (quoting *Price v. Penney Co.*, 26 N.C. App. 249, 252, 216 S.E.2d 154, 156 (1975)).

Moreover, Defendants did not argue to the trial court that the statute of limitations should be tolled until Defendants learned of Rhyne's statements, and cannot raise this issue for the first time on appeal. N.C. R. App. P. 10(b)(1). We conclude that Defendants' claim for slander *per se* was barred by the statute of limitations. Therefore we do not reach the issue of whether Rhyne's remarks constituted slander *per se*.

---

[6] Defendants next argue that the trial court erred by entering summary judgment, on the grounds that there were genuine issues of material fact as to Defendants' counterclaim/third party claim for invasion of privacy and misappropriation of the Defendants' names and likenesses. We disagree.

"It is well known that the concept of a right of privacy recognizable in law appears to have originated in a law review article by Louis D. Brandeis, later a Justice of the Supreme Court of the United States,

and his law partner, Samuel D. Warren. Warren & Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)." *Hall v. Post*, 323 N.C. 259, 262, 372 S.E.2d 711, 713 (1988). "The Supreme Court of North Carolina has recognized that 'an invasion of privacy by the appropriation of a plaintiff's photographic likeness for the defendant's advantage as a part of an advertisement constitutes a tort giving rise to a claim for relief recognizable at law.' " *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 322, 312 S.E.2d 405, 411 (1984) (citing *Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55 (1938)).

Plaintiff law firm, Merritt Flebotte, maintains a website that displays information about the firm, including information about its attorneys. While Hemmings and Stevens worked at the firm, the website had links to brief biographical sketches of each. Defendants contend that Plaintiffs continued to display Defendants' photographs and biographical information on the Merritt Flebotte website after Defendants left the firm. On this basis, Defendants assert that Plaintiffs invaded their privacy by misappropriating their images and professional reputation. However, Plaintiffs supported their motion for summary judgment with uncontradicted evidence that:

> [a]fter Hemmings and Stevens left the firm, Rhyne contacted the firm's technical support service, and asked them to delete Stevens and Hemmings from the firm's website.

> On 13 September 2005 the technical support staff deleted Defendants' names and biographical information from the website, and removed all links on Plaintiffs' website that connected to information about Defendants.

> After Defendants were deleted from the firm's website, it was no longer possible to navigate from the firm's homepage to pages about the Defendants. A visitor to the firm's website would not see Defendants names among the attorneys and none of the links on the website led to information or pages about Defendants.

In her 3 April 2006 email to Defendant Joy Webb, Stevens stated "I understand you took our names off the actual web page[.]" In her deposition testimony, Stevens conceded that it was not possible to access any web links or information about her or Hemmings after they were deleted from the website, and that she had no evidence to contradict Plaintiffs' evidence that this was done on 13 September 2005. When Hemmings was deposed, he also admitted that there was

no way to navigate from Plaintiffs' website to any information about him or Stevens. Plaintiffs also offered testimony showing that when Hemmings and Stevens quit the firm, Plaintiffs wanted to remove all references to Defendants from Plaintiffs' website and took action to accomplish this removal, and that after Defendants left the firm, Plaintiffs did not use information about Defendants for any purpose.

Thus, Plaintiffs' uncontradicted evidence established that: (1) shortly after Defendants left the law firm, Plaintiffs directed their technical support service to delete Defendants from the Plaintiffs' website; (2) on 13 September 2005 the technical service deleted Defendants' names and informational pages from Plaintiffs' website; (3) after Defendants were deleted from the website, there was no information about Defendants on the website, and no way to navigate from Plaintiffs' website to information about Hemmings or Stevens, and; (4) after Defendants left Plaintiffs' law firm, Plaintiffs made no use of information about Defendants. This evidence, which showed that Defendants could not prove that Plaintiffs had misappropriated or used Defendants' photographs or biographical information after Defendants quit Plaintiffs' law firm, met Plaintiffs' initial burden of "proving that an essential element of the opposing party's claim is nonexistent, or . . . that the opposing party cannot produce evidence to support an essential element of his claim[.]" *Collingwood*, 324 N.C. at 66, 376 S.E.2d at 427 (citations omitted). This shifted the burden to Defendants to produce evidence showing a genuine issue of material fact regarding their counterclaim.

Defendants did not produce evidence contradicting Plaintiffs' evidence that, when Plaintiffs instructed the technical support service to delete Defendants from the website, the consultant removed links referring to Defendants from the website. The files for these documents were stored as html code files on another computer, called a server. Plaintiffs did not own the server, and no evidence was presented to suggest that Plaintiffs intended to preserve a copy of the deleted files. But, because the actual html code was not removed from the server, it was theoretically possible to use Google or another search engine to retrieve and view the deleted pages. Defendants offered no evidence that any member of the public had accessed these files.

Defendants did not allege that Plaintiffs were negligent, but instead brought a claim for the intentional tort of invasion of privacy. Assuming, *arguendo*, that after Plaintiffs removed all informa-

tion and links pertaining to Defendants from Plaintiffs' website, an internet search engine might return links to some of the deleted biographical pages, Defendants fail to articulate how this would constitute misappropriation of their image or biographies for any commercial purpose:

> [a]ccording to [Defendant] he was able to access [documents deleted from Plaintiffs' website] by entering the extended URL address . . . [Defendant] claims he was also able to access the [documents] through various website searches conducted through Google. . . . [Defendant] was able to unearth what is for all practical purposes a cyberspace artifact[.] . . . Indeed, it is undisputed that after the [13 September file deletions] the link[s] on [Plaintiffs'] website to [Defendants] . . . [were] deleted[.] . . . Beyond saying that his Google searches took him to [a] link that took him to [a copy of the deleted files,] . . . [Defendant] explains nothing that would constitute clear and convincing evidence of contumacy by [Plaintiffs].

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 2006 U.S. Dist. LEXIS 29082 (N.D. Ill. May 10, 2006) , *aff'd* 471 F.3d 745, 2006 U.S. App. LEXIS 30271 (7th Cir. Ill. 2006). We conclude that Defendants failed to produce evidence of Plaintiffs' invasion of their privacy by misappropriation of likeness. This assignment of error is overruled.

Finally, Defendants argue that the trial court erred by denying their motion to compel discovery, on the grounds that it was reasonably likely to lead to admissible evidence. We have reviewed this assertion and find it to be without merit. This assignment of error is overruled.

For the reasons discussed above, we conclude that the trial court did not err and that its order should be

Affirmed.

Judges McGEE and GEER concur.