IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-1014

Filed 05 July 2023

Watauga County, No. 20-CVS-396

THOMAS A. FOXX and wife, VIRGINIA A. FOXX, Plaintiffs,

v.

WALTER GLEN DAVIS, JR., Trustee of the WALTER GLEN DAVIS, JR.
REVOCABLE LIVING TRUST dated the 9th day of June, 2005 and FLORENCE S.
DAVIS, Defendants.

Appeal by Plaintiffs and cross-appeal by Defendants from orders entered 19
January 2021 by Judge R. Gregory Horne, 5 January 2022 by Judge Nathaniel J.
Poovey, and 11 May 2022 and 18 May 2022 by Judge Kimberly Y. Best, and judgment
entered 8 June 2022 by Judge Kimberly Y. Best in Watauga County Superior Court.
Heard in the Court of Appeals 25 April 2023.

> *Miller & Johnson, PLLC, by Nathan A. Miller, for Plaintiffs-Appellants/Cross-Appellees.*
>
> *Moffatt & Moffatt, PLLC, by Tyler R. Moffatt and Joseph T. Petrack, for Defendants-Appellees/Cross-Appellants.*

COLLINS, Judge.

This appeal arises from a dispute between the parties involving paving a road
running through an easement. Plaintiffs appeal from orders granting Defendants'
motion for partial summary judgment on their declaratory judgment action;
Defendants' motion for summary judgment on their reformation claim ("Reformation

Order"); and Defendants' motion to amend the Reformation Order.

Plaintiffs also appeal, and Defendants cross-appeal, the trial court's judgment entered after a bench trial. Plaintiffs argue that the trial court erred by concluding that Defendants were not liable for a portion of the cost of paving the road under a theory of unjust enrichment and by concluding that Defendants were liable only in the amount of $9,900 for breach of contract. Defendants argue that the trial court erred by concluding that they were liable for breach of contract.[1]

We hold as follows: The trial court did not err by granting Defendants' motion for partial summary judgment on their declaratory judgment action. However, the trial court erred by granting Defendants' motion for summary judgment on their reformation claim and their subsequent motion to amend the Reformation Order.

The trial court did not err in its judgment by concluding that Defendants were not liable for a portion of the cost of paving the road under a theory of unjust enrichment. Furthermore, the trial court did not err by concluding that Defendants were liable for breach of contract. However, the trial court erred by concluding that Defendants were liable for the breach in the amount of $9,900.

Accordingly, we affirm in part, reverse in part, and remand.

---

[1] Plaintiffs' notice of appeal includes the trial court's order setting aside an entry of default against Defendants. However, Plaintiffs make no argument pertaining to this order on appeal and any issue pertaining to this order is abandoned. *See* N.C. R. App. P. 28(a); N.C. R. App. P. 28(b)(6).

## I.    Background

Plaintiffs Thomas Foxx and Virginia Foxx owned multiple tracts of real property in Watauga County.  Plaintiffs entered into a contract with Defendants Walter Glen Davis, Jr., and Florence Davis in February 1997 for the purchase of a 10-acre tract of Plaintiffs' property (the "Davis Property").[2]  In May 1997, Plaintiffs conveyed to Defendants by general warranty deed the Davis Property and an easement across an adjoining tract of Plaintiffs' property to access the Davis Property.  Concerning the easement, the deed stated, in relevant part:

> There is also conveyed herewith a perpetual, non-exclusive right-of-way and easement for purposes of ingress, egress and regress 50 feet in width leading from N.C. Highway 105 to the [Davis Property] . . . .
>
> By acceptance of this deed, Grantees . . . hereby agree to share in the maintenance and repair of the road to be constructed by Grantors from N.C. Highway 105 to the [Davis Property] . . . . Until such time as Grantors convey property to third parties together with an easement to use said road, Grantors shall pay 20% of the cost of maintenance and repair of said road and Grantees shall pay 80% of the cost of maintenance and repair of said road. Grantors hereby covenant and agree to obligate each additional property owner who is conveyed an easement to use said road to share equally in Grantees' 80% obligation for maintenance and repair.

A 12-foot-wide gravel road leading from NC Highway 105 to the Davis Property was constructed by Plaintiffs in 1997 and is known as Rime Frost.

---

[2] Walter Glen Davis, Jr., conveyed by quitclaim deed his one-half undivided interest in the Davis Property to himself as trustee of the Walter Glen Davis, Jr., Revocable Living Trust in August 2005, and he is therefore a party to this action in his capacity as trustee.

In April 2016, Plaintiffs conveyed a 55.225-acre tract of their property to the Blue Ridge Conservancy by warranty deed ("Conservancy Deed"). Thereafter, Plaintiffs and Defendants entered into a contract which essentially relieved Blue Ridge Conservancy of any obligation to contribute to maintenance or repair of Rime Frost. The contract between Plaintiffs and Defendants stated, in relevant part:

> WHEREAS, the deed from FOXX to DAVIS . . . contained provisions whereby FOXX agreed to pay a portion of the cost of maintenance and repair of a road leading from U.S. Highway 105 to the property conveyed to DAVIS and to obligate additional property owners who may be conveyed an easement to use said road to share in DAVIS' obligation for maintenance and repair of the road. . . .
>
> . . . .
>
> WHEREAS, FOXX, DAVIS and the DAVIS TRUST, each desire to (i) terminate the provisions contained in the deeds requiring road maintenance contribution . . . as those provisions may apply because of the conveyance of the . . . 55.225 acres, and (ii) to release Blue Ridge Conservancy, its successors and assigns, as owners of the 55.225 acre tract from the aforesaid responsibilities as contained in the deed . . . . Except for the specific release of Blue Ridge Conservancy, its successors and assigns, as owners of the 55.225 acre tract, from the responsibilities contained in the above referenced deeds, the obligations of FOXX, DAVIS AND the DAVIS TRUST in all other respects remain unchanged.

Plaintiffs obtained a proposal from Moretz Paving on 4 September 2019 to pave Rime Frost from the point where it crosses the Watauga River to the point where it splits near the parties' driveways. Moretz Paving's total estimate was $64,900 and was broken down as follows: the preparation of the stone base for paving totaled

$19,800, and the application of the asphalt totaled $45,120. Mr. Foxx met with Mr. Davis to discuss the proposal, and Mr. Davis stated that he would discuss the proposal with Mrs. Davis. Plaintiffs did not receive any further response from Defendants regarding the proposal.

Plaintiffs sent Defendants a letter on 8 November 2019, which stated:

> After talking with Glen and sending you both a copy of the paving proposal over 6 weeks ago, we have not heard from you. I also left [Mrs. Davis] a recorded message on her phone on Monday, November 4. However, we could not wait longer to hear from you if we were to get on the spring/summer schedule for 2020 and, therefore, we have submitted the signed contract for the work to be done.
>
> Based upon your General Warranty Deed of May 7, 1997, but adjusted in your favor since we now live here on the property, we would share equally in the cost of this section of road work.

Defendants sent an email to Plaintiffs on 13 November 2019, which stated, "[we] have both reviewed the proposal and discussed it, and we do not wish to participate in the paving of the farm road." Plaintiffs had Rime Frost paved by Moretz Paving in July 2020 for a total cost of $64,900.

Plaintiffs filed suit against Defendants in August 2020, asserting claims for breach of contract, termination of easement, and unjust enrichment/quantum meruit. Defendants moved to dismiss Plaintiffs' termination of easement claim, which was granted by written order entered 19 January 2021. On 8 February 2021, Defendants filed an answer and counterclaims for declaratory judgment, accounting, and

recoupment. Defendants' declaratory judgment action asked the trial court to decide the following:

> a. Does the Easement prohibit Plaintiffs from placing any impediments within the 50-foot easement area shown on the plat recorded in Plat Book 13, Page 179, Watauga County, North Carolina Public Registry?
>
> b. What activities are included within the scope of the terms "maintenance" and "repair" as those terms are used in the Easement?
>
> c. Does paving Rime Frost from the point where Rime Frost crossed the Watauga River to the point where Rime Frost splits near the driveways between the Plaintiffs' and Defendants' respective properties constitute an "improvement," rather than "maintenance" or "repair" of the road, and, thus, fall outside the scope of the Easement?
>
> d. What portion of purported funds that were paid for the work Plaintiffs allege in their Complaint was for "improvements" to Rime Frost?
>
> e. What portion of purported funds that were paid for the work Plaintiffs allege in their Complaint was for "maintenance" and "repair" of Rime Frost as those terms are used in the Easement?
>
> f. Was the obligation to pay for maintenance and repairs to Rime Frost contained in the Easement (i.e., 'Grantors shall pay 20% of the cost of maintenance and repair of said road and Grantees shall pay 80% of the cost of maintenance and repair of said road') modified by the Conservancy Deed?
>
> g. Did the Conservancy Deed violate Plaintiffs' covenant to obligate each additional property owner who is conveyed an easement to use Rime Frost to share equally in Defendants' 80% obligation for maintenance and repair?
>
> h. Was the obligation to pay for maintenance and repairs to Rime Frost contained in the Easement (i.e., 'Grantors shall pay 20% of the cost of maintenance and repair of said road and Grantees shall pay 80% of the cost of maintenance and repair of said road') modified by the November 8, 2019

letter from Plaintiffs to Defendants?

Defendants filed amended counterclaims, asserting an additional claim for reformation of the easement based on mutual mistake. Defendants alleged, in part, that "[t]he shared mutual understanding of Plaintiffs and Defendants at the time of entering into the [purchase contract] was that Plaintiffs would sell additional tracts of land from the Plaintiffs' Property and with each sale, Defendants' obligation to pay for road maintenance would be reduced proportionately[.]"

Defendants moved for partial summary judgment on their declaratory judgment action. The trial court granted the motion by order entered 5 January 2022, declaring that:

> a. Resurfacing of the gravel roadway within the Easement with asphalt, concrete, or other hot-mix or non-gravel compacted material constitutes an improvement and therefore does not fall within the scope of the terms "maintenance" and "repair," as used in the Easement;
>
> b. In the present action, Plaintiffs' asphalt paving over the existing gravel roadway in the Easement from the point where the Easement crosses the Watauga River to the point of intersection of the Easement and Plaintiffs' driveway constituted an improvement and therefore fell outside of the scope of the terms "maintenance" and "repair," as used in the Easement; and
>
> c. The terms "maintenance" and "repair," as used in the Easement, do not include the maintenance or repair (as herein interpreted) of the asphalt paving over the existing gravel roadway in the Easement from the point where the Easement crosses the Watauga River to the point of intersection of the Easement and Plaintiffs' driveway.

The parties filed competing motions for summary judgment on Defendants'

reformation claim. The trial court denied Plaintiffs' motion and granted Defendants' motion for summary judgment.[3] In its Reformation Order, the trial court reformed the easement to read, in pertinent part: "Until such time as Grantors convey[] property to third parties together with an easement to use said road, Grantors shall pay 50% of the cost of maintenance and repair of said road and Grantees shall pay 50% of the cost of maintenance and repair of said road."

Defendants voluntarily dismissed the portion of their declaratory judgment action, which petitioned the trial court to decide whether the easement was modified by the Conservancy Deed, and whether the Conservancy Deed violated Plaintiffs' covenant to obligate each additional property owner to share equally in Defendants' 80% obligation for maintenance and repair. Additionally, Defendants moved to amend the Reformation Order to further state: "Grantors hereby covenant and agree to obligate each additional property owner who is conveyed an easement to use said road to share equally in Grantees' 50% obligation for maintenance and repair." The trial court granted Defendants' motion by written order entered 18 May 2022. That same day, Defendants voluntarily dismissed the remainder of their declaratory judgment action, as well as their claims for accounting and recoupment.

A bench trial was held on 18 May 2022 on Plaintiffs' remaining claims for unjust enrichment and breach of contract. The trial court entered a written judgment

---

[3] The parties also filed competing motions for partial summary judgment on Defendants' declaratory judgment action, but the trial court did not rule on the motions.

on 8 June 2022, concluding, in relevant part, that Defendants were not liable to Plaintiffs under the theory of unjust enrichment, but that Defendants were liable to Plaintiffs in the amount of $9,900 for breach of contract.

Plaintiffs filed a timely notice of appeal from the trial court's orders and judgment. Defendants filed a timely notice of appeal from the trial court's judgment.

## II. Discussion

## A. Summary Judgment

Plaintiffs argue that the trial court erred by granting Defendants partial summary judgment on their declaratory judgment action and summary judgment on their reformation claim.

### 1. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2022). "In ruling on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party." *Keller v. Deerfield Episcopal Ret. Cmty., Inc.*, 271 N.C. App. 618, 622, 845 S.E.2d 156, 160 (2020) (quotation marks and citation omitted).

"The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact." *Badin Shores Resort Owners Ass'n v.*

*Handy Sanitary Dist.*, 257 N.C. App. 542, 549, 811 S.E.2d 198, 204 (2018) (citation omitted). "This burden can be met by proving: (1) that an essential element of the non-moving party's claim is nonexistent; (2) that discovery indicates the non-moving party cannot produce evidence to support an essential element of his claim; or (3) that an affirmative defense would bar the claim." *CIM Ins. Corp. v. Cascade Auto Glass, Inc.*, 190 N.C. App. 808, 811, 660 S.E.2d 907, 909 (2008) (citation omitted).

When the movant properly supports its motion for summary judgment pursuant to this rule, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2022). Furthermore, affidavits, both supporting and opposing, must be made "on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." *Merritt, Flebotte, Wilson, Webb & Caruso, PLLC v. Hemmings*, 196 N.C. App. 600, 604-05, 676 S.E.2d 79, 83 (2009) (quotation marks and citation omitted).

We review a trial court's order granting summary judgment de novo. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). "Under de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower [court]." *Archie v. Durham Pub. Sch. Bd. of Educ.*, 283 N.C. App. 472, 474, 874 S.E.2d 616, 619 (2022) (quotation marks and citation omitted).

## 2. Declaratory Judgment

Plaintiffs contend that the trial court erred by declaring that paving Rime Frost "constituted an improvement and therefore fell outside of the scope of the terms 'maintenance' and 'repair,' as used in the Easement" and that "[t]he terms 'maintenance' and 'repair,' as used in the Easement, do not include the maintenance or repair . . . of the asphalt paving over the existing gravel roadway[.]"

An easement created by a deed is a contract and is therefore interpreted in accordance with general principles of contract law. *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962). "The controlling purpose of the court in construing a contract is to ascertain the intention of the parties as of the time the contract was made[.]" *Id.* "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) (citation omitted). "In construing contracts[,] ordinary words are given their ordinary meaning unless it is apparent that the words were used in a special sense. The terms of an unambiguous contract are to be taken and understood in their plain, ordinary and popular sense." *Badin Shores Resort Owners Ass'n*, 257 N.C. App. at 557, 811 S.E.2d at 208 (quotation marks and citation omitted). "When the language of a contract is plain and unambiguous then construction of the agreement is a matter of law for the court." *RME Mgmt., LLC v. Chapel H.O.M. Assocs., LLC*, 251 N.C. App. 562, 567, 795 S.E.2d 641, 645 (2017) (quotation marks and citation omitted).

Here, the deed creating the easement states, in pertinent part:

> By acceptance of this deed, Grantees . . . hereby agree to share in the maintenance and repair of the road to be constructed by Grantors from N.C. Highway 105 to the [Davis Property] . . . . Until such time as Grantors convey property to third parties together with an easement to use said road, Grantors shall pay 20% of the cost of maintenance and repair of said road and Grantees shall pay 80% of the cost of maintenance and repair of said road. Grantors hereby covenant and agree to obligate each additional property owner who is conveyed an easement to use said road to share equally in Grantees' 80% obligation for maintenance and repair.

The deed does not define the terms "maintenance" or "repair," and we therefore interpret these terms in their plain, ordinary, and popular sense in construing the contract. *Badin Shores Resort Owners Ass'n*, 257 N.C. App. at 557, 811 S.E.2d at 208. "Maintenance" is defined as "to keep in an existing state (as of repair)[.]" *The Merriam-Webster Dictionary* 431 (2016). "Repair" is defined as "to restore to good condition[.]" *Id.* at 613. Paving Rime Frost did not constitute maintenance or repair because it did not keep the gravel road in an existing state or restore the gravel road to good condition. Rather, paving Rime Frost constituted an improvement because it enhanced the quality of the road. *See id.* at 361 (defining "improve" as "to enhance or increase in value or quality"). Thus, under the plain language of the easement, paving Rime Frost was not maintenance or repair, but rather was an improvement.

Furthermore, the road Plaintiffs constructed from N.C. Highway 105 to the Davis Property in 1997 was "a gravel road . . . 12 feet wide with probably six inches

of gravel on it." The easement thus indicates that the parties' intent was for Defendants to share in the maintenance and repair of Rime Frost as a gravel road.

Accordingly, the trial court did not err by granting Defendants partial summary judgment on their declaratory judgment claim.

### 3. *Reformation*

Plaintiffs contend that the trial court erred by reforming the deed to reduce Defendants' road maintenance and repair obligation from 80% to 50% based on mutual mistake. Plaintiffs specifically argue that Defendants' reformation claim is barred by the statute of limitations.

"Reformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by the fraud of the other, the written instrument fails to embody the parties' actual, original agreement." *Branch Banking & Trust Co. v. Chi. Title Ins. Co.*, 214 N.C. App. 459, 463, 714 S.E.2d 514, 517-18 (2011) (quotation marks and citation omitted). "A mutual mistake is one common to both parties to a contract . . . wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." *Id.* (quotation marks and citation omitted). When a party seeks to reform a contract based on mutual mistake, the burden of proof lies with the moving party to prove the mutual mistake by clear, cogent, and convincing evidence. *Smith v. First Choice Servs.*, 158 N.C. App. 244, 250, 580 S.E.2d 743, 748 (2003).

Under N.C. Gen. Stat. § 1-52, an action for relief on the ground of mistake must be brought within three years of "the discovery by the aggrieved party of the facts constituting the . . . mistake." N.C. Gen. Stat. § 1-52(9) (2022). "A plaintiff 'discovers' the mistake–and therefore triggers the running of the three-year limitations period–when he actually learns of its existence or should have discovered the mistake in the exercise of due diligence." *Wells Fargo Bank, N.A. v. Coleman*, 239 N.C. App. 239, 244, 768 S.E.2d 604, 608 (2015) (citation omitted).

Here, the purchase contract, dated 5 February 1997, states, in relevant part:[4]

> Davis will agree to share in a percentage of the road maintenance until further development occurs, at which time a POA will be formed. This percentage will be 80% Davis, and 20% Foxx. Each new homeowner will share equally in the 80% share. Foxx will not share in the maintenance after five (5) homeowners are present or no longer uses the road for farming or residential use.

Likewise, the deed creating the easement, dated 7 May 1997, states:[5]

> By acceptance of this deed, Grantees . . . agree to share in the maintenance and repair of the road to be constructed by Grantors from N.C. Highway 105 to the property conveyed herein as shown on the above-referenced plat. Until such time as Grantors convey property to third parties together with an easement to use said road, Grantors shall pay 20% of the cost of maintenance and repair of said road and Grantees shall pay 80% of the cost of maintenance and repair of said road.

Furthermore, on 17 August 2005, Walter Glen Davis, Jr., conveyed by

---

[4] The Davises are Defendants in this case and the Foxxes are Plaintiffs.
[5] Grantees are Defendants in this case and Grantors are Plaintiffs.

quitclaim deed his one-half undivided interest in the Davis Property to himself as trustee of the Walter Glen Davis, Jr., Revocable Living Trust. The quitclaim deed included the verbiage from the 7 May 1997 deed regarding maintenance and repair of the road. Defendants also entered into an agreement with Plaintiffs on 15 April 2016 to "terminate the provisions contained in the deeds requiring road maintenance contribution" as to Blue Ridge Conservancy, and to "release Blue Ridge Conservancy, . . . as owners of the 55.225 acre tract from the aforesaid responsibilities as contained in the deed[.]"

Defendants should have discovered any mutual mistake by 15 April 2016 at the latest, after entering into the agreement with Plaintiffs to exempt Blue Ridge Conservancy from any road maintenance obligations. Because Defendants did not file their reformation claim until 3 August 2021, more than five years later, it is barred by the statute of limitations, and the trial court erred by granting Defendants' motion for summary judgment. Furthermore, the trial court erred by granting Defendants' motion to amend the Reformation Order to add that Plaintiffs "agree to obligate each additional property owner who is conveyed an easement to use said road to share equally in Grantees' 50% obligation for maintenance and repair" because Defendants' reformation claim is barred by the statute of limitations.

## B. Judgment

Plaintiffs and Defendants argue that the trial court made erroneous conclusions of law in its judgment entered after a bench trial on Plaintiffs' remaining

claims for unjust enrichment and breach of contract.

### 1. *Standard of Review*

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether those findings support the conclusions of law and ensuing judgment." *Ward v. Ward*, 252 N.C. App. 253, 256, 797 S.E.2d 525, 528 (2017) (citation omitted). "Findings of fact by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) (citation omitted). The trial court's conclusions of law are reviewable de novo on appeal. *Donnell-Smith v. McLean*, 264 N.C. App. 164, 168, 825 S.E.2d 672, 675 (2019).

### 2. *Unjust Enrichment*

Plaintiffs argue that the trial court erred by concluding that Defendants were not liable for a portion of the cost of paving the road under a theory of unjust enrichment.

A prima facie claim for unjust enrichment has five elements: (1) "one party must confer a benefit upon the other party"; (2) "the benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances"; (3) "the benefit must not be gratuitous"; (4) "the benefit must be measurable"; and (5) "the

defendant must have consciously accepted the benefit." *JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C. App. 537, 541-42, 750 S.E.2d 555, 559 (2013) (quotation marks, emphasis, and citations omitted).

"Not every enrichment of one by the voluntary act of another is unjust." *Wright v. Wright*, 305 N.C. 345, 350, 289 S.E.2d 347, 351 (1982). "Where a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for [its] value." *Rhyne v. Sheppard*, 224 N.C. 734, 737, 32 S.E.2d 316, 318 (1944).

Here, the trial court made the following pertinent findings of fact:

> 21. In 2019, the Plaintiffs asked Moretz Paving, Inc. to give them a proposal for paving Rime Frost from where the pavement ends just after the bridge crossing the Watauga River to where the Plaintiffs' driveway intersects with Rime Frost.
>
> 22. Moretz Paving, Inc. dispatched Robert Stroup, an estimator with Moretz Paving, Inc. to estimate the cost and prepare the proposal for the paving of Rime Frost for the Plaintiffs.
>
> . . . .
>
> 24. Mr. Stroup prepared an estimate on September 4, 2019 for the total amount of $64,900.00. . . .
>
> . . . .
>
> 34. Plaintiffs notified Defendants of their desire to pave Rime Frost and of the costs and asked Defendants to participate by sharing equally in the cost of the paving of Rime Frost.
>
> 35. On November 13, 2019, Defendants informed the

Plaintiffs via email that they were not going to participate in the paving. . . .

36. In July of 2020, Plaintiffs had Moretz Paving, Inc., repair[] and prepare[] the gravel base and pave[] Rime Frost from where the pavement ended after the Watauga River bridge to Plaintiffs' driveway.

. . . .

39. There was never an agreement between the parties to share in the asphalt costs.

. . . .

42. Defendants did not voluntarily accept the paving of Rime Frost, and in fact refuse[d] the paving before the work commenced.

These findings of fact are supported by competent evidence, including, inter alia, Defendants' lack of response after Mr. Foxx met with Mr. Davis to discuss the proposal, and Defendants' email to Plaintiffs specifically declining to participate in the paving of Rime Frost.

Plaintiffs contend that Defendants voluntarily accepted the paving of Rime Frost because Defendants "never stated they weren't going to voluntarily accept the paving and find another way to reach their home[,]" and Defendants "continue to utilize the pavement more than once a day." However, Defendants affirmatively rejected Plaintiffs' proposal to pave Rime Frost and Defendants' continued use of Rime Frost to access their property does not constitute a voluntary acceptance of the paving. *See Rhyne*, 224 N.C. at 737, 32 S.E.2d at 318. The findings of fact support the trial court's conclusion of law that Plaintiffs failed to prove that Defendants "are

liable to Plaintiffs for the asphalt under the legal theory of quantum meruit[6]/unjust enrichment because Defendants did not voluntarily accept the paving of Rime Frost, and in fact refused the paving before the work commenced."

Accordingly, the trial court did not err by concluding that Plaintiffs could not recover under a theory of unjust enrichment.

### 3. Breach of Contract

Defendants argue that the trial court erred by concluding that they were liable for breach of contract and awarding Plaintiffs $9,900, one-half of the cost of preparing Rime Frost for paving. Plaintiffs assert that the trial court correctly concluded that Defendants were liable for breach of contract, but erred by only awarding them one-half of the cost of preparing Rime Frost for paving based upon the reformed deed.

The trial court made the following pertinent findings of fact:

> 26. The preparation of the stone base for the paving of Rime Frost was $19,800.00.
>
> 27. The application of the asphalt, including all materials and labor cost $45,120.00.
>
> 28. Mr. Stroup determined that 660 tons of gravel would be needed to repair and prepare Rime Frost for paving as the road had 2 to 3 inches of gravel in most places and 6 inches in some places.
>
> 29. Mr. Stroup testified that the industry standard for a gravel road is 6 inches of gravel and if you are going to do the work right then you would need to compact it.

---

[6] "*Quantum meruit* is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." *Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998) (citations omitted).

. . . .

31. Heather Isaacs with Moretz Paving, Inc. as a Senior Administrative Assistant noted in her testimony that you might not wet a gravel road as a repair.

. . . .

33. The [c]ourt finds that the testimony of Robert Stroup and Heather Isaacs aren't inconsistent and that to repair and maintain a gravel road it requires adding the base gravel to depth of 6 inches, to compact it and to wet it.

Robert Stroup with Moretz Paving testified, in relevant part, as follows:

Q. How much gravel base was there on the road?

A. Gravel base applied was 600, I mean, yeah, 660 tons.

Q. I understand that. How much on the road already existed, if you know?

A. Well I can't answer that. You know, two to three inches in places, and then there might be five, six in another.

. . . .

Q. What exactly goes into the prepped to pave? What exactly consists of that work?

A. Stone is added and bladed with a mower grader, and then to prep it, to pave, you add water to it and take a laboratory roller and compact it and it's ready to pave. The prep to pave is the compaction process of getting it ready to pave it.

. . . .

Q. Have you ever outside of Moretz Paving, have you ever worked on repairing a gravel road without paving it?

A. Yes, sir, but not to the extent of compacting it like you are. It's a whole different process, prepping to paving, just getting it down on your driveway where you can drive over it.

Q. If someone had a gravel road, driveway, and simply wanted it to be repaired on an annual basis, do you know

what type of work would go into that?

A. Yes, sir. As a general rule you would, in most cases in this country people just take their farm tractor and put a blade on it and drag it and that's the end of it. To do it properly it needs to be bladed and get the proper elevations on it to where the water would run to where it's supposed to go and then compact it. But very seldom does that happen. It's an expense that as a general rule folks don't want to go to.

Q. So there's a difference between preparing a road to pave it compared to repairing a gravel road?

A. Yes, sir, very definitely.

Heather Isaacs with Moretz Paving testified, in relevant part, as follows:

Q. Mr. Stroup testified earlier, I asked him about whether there was any difference in preparing a road to pave it versus maintaining and repairing an existing gravel road. And I'll represent to you, I believe as you were in the courtroom, that he said that there was a difference. Would you agree that there's a difference between those two things?

A. Yes, absolutely.

Q. What do you believe the difference would be between those two things?

A. Besides cost --

. . . .

Q. When you said besides cost, what would be the difference in cost?

A. Well if you're just repairing a gravel road, you're not going to have as much man hours. You're not going to have -- if you're doing a repair, sometimes you can get away with a little bit less material as well. But to repair something correctly as far as just repairing just a gravel road, if I'm just going to repair a gravel road, I would go in with a motor grader, I would lay the stone down, and then I would roll it. But you know, whenever you're prepping it

> to pave it you have to actually wet that. And you're probably not going to take the time to wet just a repair gravel [sic]. . . .

Stroup's testimony indicates that maintaining a gravel road involves adding stone and "[t]o do it properly it needs to be bladed . . . and then compact[ed]." Isaacs' testimony indicates that maintaining a gravel road involves laying stone, using a motor grader, and rolling the gravel. Although Isaacs testified that "you're probably not going to take the time to wet just a repair gravel[,]" the trial court determined the credibility of the witnesses and the weight to be given their testimony in making its findings of fact. *See Kirkhart v. Saieed*, 98 N.C. App. 49, 54, 389 S.E.2d 837, 840 (1990) ("The trial court is in the best position to weigh the evidence, determine the credibility of witnesses and the weight to be given their testimony, and draws the reasonable inferences therefrom." (quotation marks and citation omitted)). Therefore, the trial court's findings of fact are supported by competent evidence and are conclusive on appeal. *Shear*, 107 N.C. App. at 160, 418 S.E.2d at 845.

The trial court's findings of fact support the trial court's following conclusions of law:

> 11. The [c]ourt concludes that [Defendants], breached its obligation under the Easement to pay their share of maintenance and repair of Rime Frost.
>
> 12. That Rime Frost is a private road for which the Plaintiffs and Defendants are to share in the repair and maintenance of Rime Frost in the same manner as it was initially constructed . . . .
>
> 13. That the preparation work and materials to rebuild the

gravel base as performed by Moretz Paving, Inc. constitutes repair and maintenance as set forth in the Easement.

14. The total cost of the repair and maintenance of the gravel base of Rime Frost, as performed by Moretz Paving, Inc., was $19,800.00.

However, because the trial court erred by reforming the deed to reduce Defendants' maintenance and repair obligation from 80% to 50%, the trial court erroneously concluded that "Defendants are responsible for 50% of the cost of the repair and maintenance of the gravel base of Rime Frost, as performed by Moretz Paving, Inc. which totals $9,900.00." Thus, although the trial court did not err by awarding Plaintiffs a portion of the costs associated with preparing Rime Frost for paving, the trial court erroneously calculated the costs based upon the reformed deed. Accordingly, we reverse and remand to the trial court for recalculation of damages based upon the original deed.

### III. Conclusion

We affirm the trial court's order granting Defendants' motion for partial summary judgment on their declaratory judgment action because paving Rime Frost did not constitute maintenance or repair. However, we reverse the trial court's orders granting Defendants' motion for summary judgment on their reformation claim and their subsequent motion to amend the Reformation Order because Defendants' reformation claim is barred by the statute of limitations. Furthermore, we affirm the part of the trial court's judgment concluding that Defendants were not liable for a

portion of the cost of paving the road under a theory of unjust enrichment because Defendants did not voluntarily accept the benefit. Finally, we reverse the part of the trial court's judgment concluding that Defendants were liable for breach of contract in the amount of $9,900 and remand to the trial court to recalculate damages based upon the original deed.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Judges TYSON and RIGGS concur.